**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

# 16 CV 6807

---------------------------------------------------------------

CHRIS H.,

                                       Plaintiff,

    - against -

THE STATE OF NEW YORK,
THE CITY OF NEW YORK;
COMMISSIONER OF SOCIAL SERVICES,
DEPARTMENT OF SOCIAL SERVICES;
TANDRA L. DAWSON, severally, jointly,
and in her official and individual capacity as Judge
of Supreme Court; PAUL RYNESKI, Esq;
severally, jointly, and in his official and individual
capacity as Magistrate of New York Family Court;
TIONNEI CLARKE, Esq; severally, jointly, and
in her official and individual capacity as
Magistrate of New York Family Court;
ORLANDO RIOS (shield #05241), severally,
jointly, and in his official and individual capacity
as New York City Police Officer

                                       Defendants.

----------------------------------------------------------------X

**COMPLAINT**

**JURY TRIAL DEMANDED**



Plaintiff Chris H., as and for his Complaint against Defendants for denial of basic civil

and legal rights, alleges as follows:

## PRELIMINARY STATEMENT

1. This is a civil rights action brought by Plaintiff to seek relief for the Defendants'

acts in violation of his rights secured by Civil Rights Act of and 1871, 42 U.S.C.

§1983, 1985, 1986, 1988 and the rights secured by the First, Fourth, Fifth and

Fourteenth Amendments of the United States Constitution and the rights secured

under the Constitution of the State of New York, Article I, Sections 11 and 2, the

1

common law and the anti-discrimination statues of the State of New York and City of New York.

2. Plaintiff seeks compensatory and punitive damages arising from the actions of the Defendants in discriminating against him because of his African-American race.

3. Plaintiff seeks damages and monetary relief against STATE OF NEW YORK, CITY OF NEW YORK, and all other Defendants named in the above caption, jointly, severally, officially and individually, for illegal acts that have been committed under color of law, for the purposes of depriving Plaintiff of basic civil rights secured by the Constitution of the United States and the anti-discrimination statues and laws of the Constitution of the State of New York.

4. Plaintiff found himself facing imminent threats of assault and false arrest by police officers of the New York City Police Department and additional personal threats from other City and State agencies and municipalities.

5. In self-defense and out of necessity, Plaintiff collected court documents and transcripts of hearings and court appearances.

6. As result of the ensuing threats and after individual Defendants falsified court papers and fabricated incidents under oath, Plaintiff seeks constitutional protection.

7. Herein attached as Exhibit A is a true copy of the letter with caption "Denial of Rights under Color of Law".

8. Herein attached as Exhibit B a true copy of the arrest report of the Plaintiff.


**JURISDICTION**

2

9. Jurisdiction is conferred upon this Court by 28 U.S. C. §1331, 1343, this being an action seeking redress for the violation of Plaintiff's constitutional and civil rights.

10. Plaintiff further invokes this Court's supplemental jurisdiction to adjudicate over any and all state constitutional and state law claims pursuant to 28 U.S.C. §1367(a) that are so related to claims within the jurisdiction of this Court that they form part of the same case or controversy.

## VENUE

11. Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. §1391(b) and (c) because at least one of the Defendants resides in the district and the events giving rise to this claim occurred within the boundaries of the Southern District of New York.

12. This Court is authorized to grant Plaintiff's prayer for relief regarding court costs, including and limited to reasonable attorney's fee, under 42 U.S.C. §1988.

## JURY TRIAL DEMAND

13. Plaintiff demands a jury trial in this action on each and every one of his claims as pleaded herein.

## THE PARTIES

14. Plaintiff, Christopher Henry, is an African-American citizen of the Unite States of America and, at all times relevant hereto, is a resident of the State of New York and County of New York.

3

15. Defendant City of New York, (hereinafter, "CITY") is a municipal corporation duly incorporated and authorized under the laws of the State of New York (hereinafter, "STATE").

16. Defendant New York Police Department (hereinafter, "NYPD"), is authorized by CITY to act as its agent in the area of law enforcement and for which it is ultimately responsible. The City assumes the risks incidental to hire, supervise, and control individual police officers and the maintenance of a police force.

17. Defendant Commissioner of Social Services and Department of Social Services, (hereinafter, "COMMISSIONER") is a municipality and/or agency authorized under the laws of the City of New York. COMMISSIONER acts as an agent of CITY in the area of human relations resource and for which it is ultimately responsible. The COMMISSIONER assumes the risks incidental to the employment, supervision and control of individual staff personnel within its agency or municipality.

18. Defendant Tandra L. Dawson (hereinafter, "Dawson"), at all relevant times, is and/or was acting under the color of state law in the course, scope and functions with the power and authority vested in her and incidental to the lawful pursuit of the duties as Judge of the Supreme Court, employee, servant and agent of the STATE. She is sued severally, jointly and in her official and individual capacity.

19. Defendant Paul Ryneski Esq; (hereinafter, "Ryneski"), at all relevant times, is and/or was acting under the color of state law in the course, scope and functions with the power and authority vested in him and incidental to the lawful pursuit of the duties as Magistrate of Bronx Family Court, employee, servant and agent of

the STATE.  He is sued severally, jointly and in his official and individual capacity.

20. Defendant Tionnei Clarke Esq; (hereinafter, "Clarke"), at all relevant times, is and/or was acting under the color of state law in the course, scope and functions with the power and authority vested in her and incidental to the lawful pursuit of the duties as Magistrate of Family Court of New York, employee, servant and agent of the STATE.  She is sued severally, jointly, and in her official and individual capacity.

21. Defendant, Orlando Rios (hereinafter, "Rios"), Shield Number 05241, at all relevant times, is and/or was acting under the color of state law in the course, scope and functions with the power and authority vested in him and incidental to the lawful pursuit of the duties as a NYPD police officer, employee, servant and agent of the CITY.  He is sued severally, jointly, and in his official and individual capacity.

22. By the conduct, acts, and omissions complained of herein, Defendants violated clearly established constitutional standards under the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution of which a reasonable person within similar professional role under the circumstances would have known.

## NOTICE OF CLAIM

23. On or about 22nd day of December 2015, Plaintiff, in furtherance of his Complaint herein, filed timely Notice of Intent to File a Claim against STATE and CITY in

compliance with General Municipal Law Section by delivering copies of the notices to the person(s) designated by law as the person(s) to whom such claims may be served.

24. On or about 5th day of May 2016, Plaintiff, in furtherance of his Complaint herein, filed timely Notice of Intent to File a Claim against STATE and CITY and delivering copies to whom such claims may be served.

25. The Notice of Intent was in writing, sworn to by Plaintiff and contained the above named Defendants, set out the nature of the claim, the time, place and manner by which the claim arose and the damages and injuries claimed to have been sustained by Plaintiff.

26. The CITY assigned a claim number, and Plaintiff appeared for and was subjected to an examination pursuant to 50-H hearing on or about 19th day of July 2016.

27. On the 10th day of August, 2016, the original transcript of the 50-H hearing was executed, pursuant to CPLR 3116, in the presence of a notary public and forwarded to CITY's Comptroller Office.

28. The CITY and the STATE have neglected or refused to make payment or adjustment to the claim within the statutory period.

29. All conditions precedent to the commencement of the within action have been fulfilled.

30. This action has been commenced within one year and ninety days after the happening of the events upon which these claims arise.

6

## FACTUAL AND GENERAL ALLEGATIONS

### The Arrest of Plaintiff – Rios and Other NYPD officers

31. During the early afternoon of Sunday, 10th day of May, 2009, Plaintiff was walking on the corner of West 143rd Street and Convent Avenue, when he was suddenly and without legal cause, knocked to the ground by police officers, identity of who are presently unknown,  from the NYPD even though Plaintiff did not commit any criminal offense.

32. Plaintiff was placed on the ground, assaulted by the officers, Rios placed him into custody where his hands were cuffed behind his back, and he was placed in the rear of a radio motor patrol car.

33. The physical force used by the officers in the street, in the patrol car, and inside the precinct holding cell was unnecessary, unreasonable, and excessive.

34. Rios and other officers transported Plaintiff to the 30th Precinct in upper Manhattan in the County of New York.

35. At all relevant times during the encounter with Rios and all other officers, Plaintiff acted in a lawful manner.

36. At all relevant times, Rios and other officers were on duty with the 30th Precinct of the NYPD on 10th day of May, 2009 and days after.

37. At no time during these events described herein did the Rios and other unnamed officers have probable cause for the arrest of Plaintiff and there was no legal cause or excuse for his seizure.

38. Plaintiff was initially charged with resisting arrest, disorderly conduct and violation of an Order of Protection of the Supreme Court because he was seen outside the address of his ex-wife.

39. The address on the charge was Plaintiff's home address and if the Rios and other officers would have verified the information with the New York City public real estate database, it would show that Plaintiff was the owner of the real property.

40. After approximately 24 hours inside the prison cell of the 30th Precinct, Plaintiff was processed, later transported in a white van. The van had another person and both were in hand-cuffs. Inside the van was very narrow space with metal seats and a mesh that separated them.

41. The ride the van was very, very uncomfortable. During traffic stops, Plaintiff and the other person would slide back and forth on the seats. Plaintiff felt the pain as his body slammed against the metal sides of the van. In the African-American neighborhood, this type of treatment is known as a "rough-ride" (quotation added).

42. Plaintiff was taken downtown to the Supreme Court and again he was taken into custody of the prison guards. In the basement of this Court, Plaintiff was placed in another prison cell that had approximately 45 people. The prison cell was very crowded and the Plaintiff sat on the dirty, smelly and slimy floor. Plaintiff had no idea what to expect.

43. Plaintiff stated the following: that the space within this cell was decomposed with dull-grey paint on the floors and columns; the front wall, next to the gates of the cells, was made of corroded metal; the paint on the columns had almost

8

completely chipped away; the steel bars were covered in dull-green paint; and the floor underneath the open toilet was stained brown and black; dust and urine accumulated in corners of the back walls; there were no windows but for the low-light florescent bulbs that illuminated the hallways.

44. Plaintiff's clothes were soiled and dirty from being on the floor and he did not sleep very well due to the fear of assault form the other individuals.

45. Thereafter, Plaintiff was kept in the prison cell for another 24 hours until his arraignment in Manhattan Criminal Court.

46. Eventually, Plaintiff was brought before the Judge, he pleaded not guilty to all charges and bail was set at $2,500.  No bail was posted and after sometime, Plaintiff was released.

47. The conduct of the Rios and other offices in restraining, arresting, striking, threatening and prosecuting the Plaintiff proximately caused physical, emotional and financial injury to him, as well as serious physical and emotional pain and suffering, mental anguish, shock, fright, physical pain, humiliation, embarrassment and deprivation of their constitutional rights.

48. Plaintiff suffered the trauma, debasement and humiliation as a result of being publicly arrested in front of his own real estate without any cause, and assaulted, unlawfully imprisoned and maliciously prosecuted.

49. The arrest, incarceration and persecution would create a "special relationship" (quotation added) necessary to establish liability.

50. Furthermore, Plaintiff stated that he was dehumanized.

9

51. Plaintiff seeks to vindicate his rights to be free of unlawful search, seizure, arrest and use of illegal Protective Order of the court by Rios and other police officers.

## Plaintiff's Letters of Complaint against State Actors

52. On or about 10th day of August, 2011, Plaintiff sent the first letter of complaint to Supervisors of the Family Court of New York regarding the conduct of Ryneski wherein as the Supervisors acknowledged receipt of the complaint but stated their reluctance to intervene on the matter.

53. On or about 16th day of October, 2014, Plaintiff sent the second letter of complaint to Supervisors of the Family Court of New York regarding the conduct of Ryneski wherein as the Supervisors acknowledged receipt of the complaint but stated their reluctance to intervene on the matter.

54. On or about 8th day of June, 2012, Plaintiff sent the third letter of complaint to Supervisors of the Family Court of New York regarding the conduct of Ryneski wherein as the Supervisors acknowledged receipt of the complaint but stated their reluctance to intervene on the matter.

55. On or about 3rd day of April, 2013, Plaintiff sent separate letters of complaint via certified mail to Ryneski and Dawson with the caption, "Denial of Rights Under Color of Law" (quotation added) wherein as Ryneski and Dawson confirmed receipt via post office green acknowledgement cards.

56. On or about 8th day of July, 2015, Plaintiff sent letters of complaint to the New York State Commission on Judicial Conduct regarding the conduct of Dawson

wherein as the Commission acknowledged receipt of this complaint but stated their reluctance to intervene in the matter.

57. On or about the summer of, 2011, Plaintiff sent the first letter of complaint to Supervisors of the NYPD regarding the conduct of Rios and other police officers wherein as the Supervisors acknowledged receipt of the complaint but stated their reluctance to intervene on the matter.

58. The Supervisors within the agencies and/or municipalities of the CITY and STATE were informed of all discriminatory actions against Plaintiff by all individual Defendants and the systemic deficiencies with the respective municipalities and/or agents that contributed to the harm suffered by the Plaintiff but failed to take reasonable steps to remedy these deficiencies.

59. The Supervisors within the agencies and/or municipalities of the CITY and STATE were deliberately indifferent to Plaintiff's welfare by failing to take actions that were obviously necessary to prevent or stop the deprivation of his constitutional rights. Failure to supervise individual Defendants directly resulted in the harms suffered by Plaintiff.

60. As a direct and approximate result, the actions and conduct of all individual Defendants continued without fear of discipline or reprisal.

**State Created Danger**

61. Defendant STATE received direct funding from the Federal government for one of its many agencies and municipalities known as the Child Support Enforcement

11

Unit, (hereinafter, "CSEU") of which one of the duties and functions is to collect child support payments.

62. Importantly, studies has shown that for every dollar of child support collected from mostly fathers is matched by the Title IV-D program as part of the Social Security Administration.

63. According to the 2010-2015 Official Report to New York State on Title IV-D funding, the incentive payments to STATE was approximately $4,000 to $8,000 per child.

64. As result of the foregoing, the Defendants STATE and CITY are and/or were direct benefit of the funding under the Title IV-D program and therefore special relationships existed between Plaintiff and STATE and/or CITY via the processes and procedures of the CSEU.

65. As practice and procedure, Defendants has no formal processes to correct erroneous and incorrect child support collections on behalf of Plaintiff.

66. CSEU sent delinquent notices to Credit agencies regarding delinquent child support payments from non-custodial parents to New York State.

67. Upon information and belief, as practice and procedure of CSEU, there is and/or was no process to expunge incorrect and negative details from Plaintiff's credit report.

68. Upon information and belief, Defendants arbitrarily and capriciously deprived Plaintiff of his due process rights in the absence of any countervailing State interest.

69. As a direct and approximate result of procedures and practices of CSEU and the STATE, Plaintiff has been and will be damaged as described herein.

## Acts and Omissions of Paul Ryneski

70. The initial appearance by Plaintiff in Family Court in County of New York was on the 26th day of January, 2009, in front of Support Magistrate Mathew Troy. Subsequent appearances were held by Magistrate Ryneski before whom child support proceedings were assigned for determination and findings of the facts.

71. On or about the 16th day of October, 2010, Plaintiff submitted the Affidavit in Objection to the Order of Support. On or about the 16th day of January, 2013, Judge Tandra Dawson remanded this Court Order to Magistrate Ryneski. Total elapse of time between the submission and the remanded order amounted to more than 2 year.

72. The pro-rata share of the child support obligation is and/or was unjust and inappropriate and therefore, Plaintiff filed additional Affidavit in Objection to Ryneski's Order of Support dated the 11th day of April, 2013.

73. Ryneski refused to apply the correct calculation for child support obligation by applying the deductions for housing expenses.

74. Upon information and belief, Ryneski could not believe that an African-American own real estate property in his neighborhood of Manhattan.

75. Upon information and belief, Ryneski exerted undue influence and coercion on Plaintiff to manufacture an outcome favorable to CSEU and STATE.

76. At all relevant times, Ryneski, is and/or was a resident in the Manhattan at 83 West 128th Street in the County of New York and his real estate property is approximately fifteen minutes driving distance from Plaintiff's real estate property within the same neighborhood.

## Acts and Omissions of Judge Tandra Dawson

77. The initial appearance by Plaintiff in Supreme Court of New York was on the 28th day of June, 2009, in front of Judge Dawson and upon this first day, she issued a warrant for the arrest of the Plaintiff.

78. On or about 28th day of June, 2009 Dawson issued an Order of Protection against Plaintiff in which stated that he shall stay away from his real estate property until such time that this Court deem appropriate.

79. From June, 2009 and until October, 2010, Plaintiff stayed away from his real estate property as a result of the threats of incarceration by NYPD officers and later, there comes a time, which Plaintiff learned that the Order of Protection was void ab initio and had no effect of law.

80. On or about 31st day of July, 2012 and before the Judge Dawson, Plaintiff confronted and questioned her regarding the void Order of Protection. At about this time, Plaintiff was forced into foreclosure process.

81. On or about 27th day of February, 2015 and in a Decision and Order of Judge Dawson, she purposefully stated that Plaintiff violated a direct order of Supreme Court and she wanted to charge Plaintiff with a criminal offense.

82. Dawson decision was false and there is proof on the record to support her false statement and the transcript of hearing is and/or was available.

83. As a direct and proximate result, there are no statutes of limitation with respect to void court papers.

### Acts and Omissions of Tonnei Clarke

84. On or about the 15th day of September, 2015, COMMISIONER served Plaintiff a Notice to Appear in Family Court of New York.

85. Under threat, duress and coercion, Plaintiff was summoned to appear into Family Court.

86. On or about the 8th day of February, 2016, Plaintiff filed Notice of Special Appearance with Family Court stating that Plaintiff will not accept jurisdiction of this Court in accordance with a previous Decision and Order of Magistrate Matthew Troy dated 20th day of January, 2015 wherein as all issues of Plaintiff shall be adjudicated in Supreme Court.

87. An Order of Money Judgment dated the 8th day of March, 2016 and issued by Clarke in which, child support proceeding was commenced by the COMMISIONER.

88. In sum and substance, the Order of Money Judgment was issued against Plaintiff, in favor of COMMISIONER for an amount of $26,000 (twenty-six thousand dollars), in an attempt to recoup funds based on an implied contract between Plaintiff and the City.

89. As direct and proximate results, the acts and omissions of Clarke were unjust and inappropriate -state created danger - and Plaintiff filed an Affidavit in Objection on or about May, 2016 for basic relief for lack of jurisdiction and appropriate forum in order to defend any and all attacks.

### Conclusion

90. Plaintiff's substantive due process rights were clearly established constitutional rights at the time of all Defendants' acts and omissions, and a reasonable individual would have known that their acts and omissions would violate these clearly established constitutional rights.

91. By virtue of the foregoing, Defendants deprived Plaintiff of clearly established rights protected by the due process clause of the First, Fourth, and Fifth and Fourteenth Amendments, including but not limited: the right to personal security; the right to protection from harm; the right not to be harmed physically, emotionally, or otherwise; the right to basic life necessities and services consistent with the exercise of reasonable professional judgment from CITY and STATE personnel.

92. As direct and proximate acts, individual Defendants' caused emotional, physical, psychological and harmful economic consequences and upon information and belief of Plaintiff, these acts will continue to date and into the future.

93. The actions of all individual Defendants were preformed, under the color of state law, within the scope of their employment, duties and authority within the

respective agencies and municipalities, for whose acts and omissions, the CITY, NYPD and STATE are liable under the doctrine of *Respondeat Superior*.

94. The acts and omissions of all Defendants were unconstitutional, intentional, malicious, and in bad faith, thus giving rise to punitive damages as to all Defendants with the exception of the municipalities.

## DAMAGES

95. As a direct and proximate result of the acts, described herein, of the all Defendants, Plaintiff suffered the following injuries and damages:

   (a) Violation of his rights under the First, Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States;

   (b) Loss of physical liberty;

   (c) Life threatening pain and suffering, extreme fear, emotional trauma, requiring the expenditure of money for treatment expected to last the rest of his life;

   (d) Economic damages including loss of income, job opportunities, career advancement; and

   (e) Humiliation, embarrassment, and injury of reputation.

## CAUSES OF ACTION

## COUNT I

### 42 U.S.C. § 1983 and First and Fourteenth Amendments

### (Against Individual Defendants)

96.  Except as to the punitive damages allegations of the municipalities, Plaintiff

repeats and re-alleges and incorporates by reference paragraphs 1- 95, with the

same force and effect as though fully set forth herein.

97.  By their conduct, as described herein, and acting under color of state law to

deprive the Plaintiff of his rights to freedom of speech, assembly and association

under the First and Fourteenth Amendments, the individual Defendants are

liable for violation of 42 U.S.C. §1983 which prohibits the deprivation of rights

secured under the United States Constitution.

98.  Individual Defendants have violated Plaintiff's First Amendment rights to

assembly, speech and association by unlawfully denying his right to assemble

lawfully in public; terminating his lawful assembly in front of his real estate

property; subjecting him to false arrest and illegal excessive force; maliciously

prosecuting him to deter the exercise of his Fourth and Fourteenth Amendment

rights; and interfering with and/or terminating his lawful protected activities to

purchase and reside in his real estate property.

99.  Defendants knew or should have known that Plaintiff's speech is and/or was

protected.

100. As a consequence of the individual Defendants' actions, Plaintiff has suffered

violations of his First and Fourteenth Amendment rights to free speech,

assembly and association. Plaintiff has fear and apprehension that he will, again,

be subject to similar unlawful acts by Defendants done for the purpose of limiting and preventing their First Amendment protective activities.

101. As a direct and proximate result of the individual Defendants' unlawful actions, Plaintiff has suffered damages including, physical, mental and emotional injury and pain, mental anguish, suffering, humiliation and embarrassment.

**COUNT II**

**42 U.S.C. § 1983 and Substantive Due Process: Special Relationship**

**(Against all Individual Defendants)**

102. Plaintiff repeats and re-alleges and incorporates by reference paragraphs 1- 100, with the same force and effect as though fully set forth herein.

103. At all relevant times, Individual Defendants had a special relationship with Plaintiff, in which, imposed upon them an affirmative duty to care for and protect Plaintiff from harm under the First, Fourth, Fifth, Fourteenth Amendment to the United States Constitution.

104. Defendants breached that duty. Defendants' actions and omissions were a substantial departure from the exercise of reasonable professional judgment, practice, and standards, and amounted to deliberate indifference to Plaintiff's welfare.

105. Defendants acted with deliberate indifference to and callous disregard of Plaintiff's welfare and real estate property.

106. Defendants failed to ensure the safety and well-being of Plaintiff while in their custody and jurisdiction and thus proximately causing him substantial and unnecessary physical, emotional, financial and psychological harm.

107. At all relevant times, the acts and omissions of Dawson occurred while Plaintiff was in front of the court during hearings and within the jurisdiction of the Supreme Court.

108. At all relevant times, the acts and omissions of Ryneski occurred while Plaintiff was in front of the court during hearings and within the jurisdiction of the Family Court of New York County.

109. At all relevant times, the acts and omissions of Rios and other officers occurred while Plaintiff was in custody at the 30th Precinct and cell/prison in the basement of the Supreme Court and within the jurisdiction of the NYPD and Supreme Court.

110. Dawson affirmatively exercised her authority and power to restrain Plaintiff from residing in his real estate property from March 2009 until October 2012 and as a direct and proximate result, restrained Plaintiff's liberty and rendered him homeless for several months.

111. Plaintiff paid expenses on his real estate property of approximately $40,000 during this timeframe.

112. Ryneski affirmatively exercised his authority and power to restrain Plaintiff by instituting wage garnishment based on his incorrect calculations of child support payments of which was a misapplication of the law of New York State.

113. Ryneski authorized and directed that CSEU take more than $100,000 (one hundred thousand dollars) in cash from Plaintiff wages from February 2009 until the present day.

114. CSEU authorized that Plaintiff's tax refund shall be collected and sent to the treasury of the STATE indefinitely and therefore STATE imposed limitations on the freedom of Plaintiff to act on his own behalf.

115. As a direct and proximate result, all Defendants established a special relationship with Plaintiff and therefore they owed an affirmative duty to protect him.

116. Defendants arbitrarily and capriciously deprived Plaintiff of his due process rights in the absence of any countervailing state interest and as a direct and proximate result, Plaintiff sustained harm and damages describe herein.

117. Plaintiff's substantive due process rights were clearly established constitutional rights at the time of Defendants' acts and omissions, and a reasonable individual of similar profession would have known that their acts and omissions would violate these clearly established constitutional rights.


## COUNT III

### 42 U.S.C. § 1983 and Substantive Due Process: Special Relationship
### (Against CITY, STATE, NYPD, CSEU and COMMISSIONER)

118. Except as to the punitive damages allegations of the municipalities, Plaintiff repeats and re-alleges and incorporates by reference paragraphs 1- 117, with the same force and effect as though fully set forth herein.

21

119. At all relevant times, CITY, STATE and other individual municipalities named herein, had a special relationship with Plaintiff, in which, imposed upon them an affirmative duty to care for and protect Plaintiff from harm under the First, Fourth, Fifth, Fourteenth Amendment to the United States Constitution.

120. Plaintiff sent letters of complaint to supervisor personnel within these municipalities as described above and a direct and approximate result, an assumption through promises or actions, of an affirmative duty to act on behalf of the Plaintiff who was injured by individual Defendants.

121. Plaintiff sent letters of complaint to supervisor personnel within these municipalities as described above and as a direct and approximate result, these municipalities had knowledge on the part of all individual Defendants and other agents or employees that any inaction could lead to harm.

122. Plaintiff sent letters of complaint to supervisor personnel within these municipalities, as described above, and as a direct and approximate result, direct contact has been established between each individual municipality's agents or employees and the injured Plaintiff.

123. As direct and proximate result, Plaintiff had a reasonable justifiable reliance on each all supervisors', employees' or agents' affirmative undertaking.

124. As a result of the foregoing, all municipalities herein established special relationships with Plaintiff and therefore they owed an affirmative duty to act on behalf of the Plaintiff who would be and/or was injured.

## COUNT IV

### 42 U.S.C. § 1983 and Substantive Due Process, State-Created Danger
### (Against Ryneski and STATE)

125. Except as to the punitive damages allegations of the municipalities, Plaintiff repeats and re-alleges and incorporates by reference paragraphs 1- 124, with the same force and effect as though fully set forth herein.

126. The Fourth, Fifth and Fourteenth Amendments to the United States Constitution guarantees Plaintiff's the substantive due process right to be free from state-created dangers.

127. Ryneski violated this right by taking affirmative steps to falsify the evidence to eliminate the mortgage receipt from the record to ensure that Plaintiff was charged with the responsibility to pay the maximum amount of child support according to law.

128. On or about 26th day of January, 2009, at a hearing in Family Court, Support Magistrate Matthew Troy stated that mortgage and real estate expenses shall be deducted from income before the calculation of child support payments because these deductions will lower the child support calculations.

129. Plaintiff's mortgage receipt of approximately $2,000 (two thousand dollars) was submitted as evidence in Family Court and a transcript of the hearing and Decision of Magistrate Troy's are available.

130. At the time of the acts of Ryneski, he and Plaintiff had a special relationship, given that Plaintiff was under the personal jurisdiction of the Family Court and

therefore as a direct and approximate result, Ryneski owed an affirmative duty to care for and protect Plaintiff.

131. Ryneski exercised his authority by ignoring the prior decision of Magistrate Troy and performed child support calculations in such a way as to ensure that maximum collection of funds were charged to Plaintiff. These acts and omissions of Ryneski were detailed in an Order of Family Court dated 8th day of January, 2010 and filed on 8th day of February, 2010.

132. Furthermore, Ryneski exercised his authority by submitting his calculations to the New York State agency CSEU and instruct them to commence garnishment of Plaintiff's wages.

133. As a direct result of the acts and omissions of Ryneski, more than $100,000 (one hundred thousand dollars) have been forcibly deducted from Plaintiff's paycheck through the process of income execution by CSEU from February 2009 up to and including present day and future deductions are scheduled.

134. Furthermore, there existed special relationships between Ryneski, STATE and Plaintiff. Plaintiff is a discrete class of African-American real estate property owner, non-custodial parent and a foreseeable victim and he was subjected of the acts of Ryneski and the potential harm brought about by actions of CSEU, as opposed to a member of the public in general.

135. Ryneski affirmatively used his authority in a manner which created a danger to the Plaintiff or rendered the Plaintiff more vulnerable than if the CSEU had not acted at all.

136. The harm suffered by the Plaintiff was foreseeable and fairly direct since the danger of misapplication of the law was already known by Magistrate Troy and any other reasonable person in similar profession should have known.

137. As a direct result of acts and omissions of Ryneski, additional money has been forcibly charged to Plaintiff by CSEU under the description of accrued child support arrears owed to the STATE indefinitely.

138. In looking at the Federal Social Security Act herein above, the language written into the statue allowed the United States Federal Government to give back "Incentive Payments" (quotations for emphasis) to the states for performance based child support collection. While the exact amount of money is hard to define for each state, study showed that for every one dollar collected in child support, one dollar is released from Social Security coffers that can then be given back to New York State.

139. Defendants Ryneski and CSEU acted with callous and willful disregard for Plaintiff's safety by ignoring Plaintiff's rights, despite knowledge of the decisions of Magistrate Troy herein complaint.

140. Ryneski acted with a degree of culpability that shocks the conscience when compared to the decisions of Magistrate Troy in which any reasonable person would have known that deductions of housing expenses would lower the child support calculations.

141. Additional financial harm suffered by Plaintiff as a result of the income execution was foreseeable and directly and approximately caused by actions and

omissions of Ryneski in which resulted in lower take-home wages to Plaintiff means not enough money left over to pay his mortgage.

142. As direct and approximate results of the acts and omissions of Ryneski, Plaintiff was forced into foreclosure of his real estate property in which it was sold at a loss on or about 10th day of October, for the value of $200,000 (two hundred thousand dollars).

143. The foreclosure process created a risk of danger that would not have otherwise existed if Ryneski had adequately reviewed Magistrate Troy decision and thereafter the actions of the CSEU to garnish Plaintiff's paycheck resulted in a failure to pay his mortgage.

144. Ryneski has and/or had a mortgage with Chase Financial Mortgage and Plaintiff had a mortgage with the same bank and as a direct and approximate result, Ryneski should have known the consequences regarding delinquent mortgage payment.

145. The physical, emotional and psychological harm that Plaintiff suffered from the bank foreclosure process was foreseeable, direct and approximately caused by the unconstitutional acts and omissions of Ryneski.

146. Defendants arbitrarily and capriciously deprived Plaintiff of his due process rights in the absence of any countervailing state interest of reimbursement from the Federal Social Security Act.

147. As a result of the acts and omissions of Ryneski and the STATE, Plaintiff's substantive due process rights to be free from state-created dangers were clearly established constitutional rights at the time of the events and a reasonable

individual would have known that these acts and omissions would violate clearly established constitutional rights.

148. As a direct and approximate result of the acts and omissions of Ryneski, CSEU and STATE, Plaintiff has been and will be damaged beyond the $200,000 plus the loss of real estate property appreciation and Plaintiff's reputation as described herein.

## COUNT V

### 42 U.S.C. § 1983 and Substantive Due Process, State-Created Danger
### (Against Clarke, COMMISSIONER and CITY)

149. Except as to the punitive damages allegations of the municipalities, Plaintiff repeats and re-alleges and incorporates by reference paragraphs 1- 148, with the same force and effect as though fully set forth herein.

150. The Fourth, Fifth and Fourteenth Amendments to the United States Constitution guarantees Plaintiff's the substantive due process right to be free from state-created dangers.

151. Once jurisdiction is challenged, the court cannot proceed when it clearly appears that the court lacks jurisdiction and the court has no authority to reach merits, but rather, should dismiss the action.

152. The Order of Money Judgment of Family Court, New York County by Magistrate Clarke against Plaintiff, entered on or about 8th day of March, 2016, which, in a child support proceeding brought by the COMMISSIONER.

153. Plaintiff did not agree to or had subjected himself to the jurisdiction of the Family Court based on the previous Order of Dismissal dated 20th day of January, 2015 by Magistrate Troy.

154. Plaintiff made several attempts to request that Clarke clarify jurisdiction because she had no basis of law to assume jurisdiction.

155. At the time of the acts of Clarke, she and Plaintiff had a special relationship, given that Plaintiff was not under the jurisdiction of the Family Court and therefore as a direct and approximate result, Clarke owed an affirmative duty to care for and protect Plaintiff.

156. Clarke arbitrarily and capriciously deprived Plaintiff of his due process rights in the absence of any countervailing STATE interests and the actions of the COMMISSIONER.

157. Plaintiff is a discrete class of African-American real estate property owner involved with seeking redress in Family Court and a foreseeable victim and was subjected of the acts of Clarke and the potential harm brought about by her actions, as opposed to a member of the public in general.

158. The acts and omissions of Clarke created a risk of danger that would not have otherwise existed if she had reviewed the decisions of Magistrate Troy

159. The harm suffered by the Plaintiff was foreseeable and fairly direct since Clarke created an environment wherein as Plaintiff cannot seek redress in Family Court but COMMISSIONER can exercise their authority at any time in this Family Court.

28

160. Clarke affirmatively used her authority in a manner which created a danger to the Plaintiff and rendered the Plaintiff more vulnerable than if the she had not acted at all.

161. Clarke acted with a degree of culpability that shocks the conscience when compared to the decision of Magistrate Troy in that Family Court is closed-off to Plaintiff but guaranteed full access and at any time, on the part of the COMMISSIONER – a "snake-pit" (quotations added).

162. As a direct and approximate result of the acts of Clarke and COMMISSIONER, Plaintiff has been and will be damaged beyond the $26,000 and Plaintiff's reputation as described herein.

## COUNT VI

**42 U.S.C. § 1983: Substantive Due Process - State-Created Danger from a Third-Party**

**(Against Dawson, CITY and STATE)**

163. Except as to the punitive damages allegations of the municipalities, Plaintiff repeats and re-alleges and incorporates by reference paragraphs 1- 162, with the same force and effect as though fully set forth herein.

164. The Fourth, Fifth and Fourteenth Amendments to the United States Constitution guarantees Plaintiff's substantive due process right to be free from state-created dangers; however, Dawson exposed Plaintiff to danger from a third-party.

165. From March 2009 and until October, 2012, in and Order and Decision of the court, Dawson gave permission to Mr. Donnie Williams, a convicted felon, to reside in Plaintiff's real estate property where he operated a security company named Frontlines Finest, LLC.

166. The Website of Frontlines Finest. LLC. listed the Chief Operating Officer as Mr. Williams and his identification numbers from the Department of Corrections were 81B0673 and 91A3472. New York State General Business Law §74(2) - No such license shall be issued to any person who has been convicted in this state (New York) or any other state or territory of a felony, or any offenses. Surrogate's Court Procedure Act Law §707(1)(d) - Fiduciaries are ineligible if convicted of a felony.

167. On or about September, 2009 in a Decision of the Supreme Court by Dawson, she used here authority under the color of law, to force jurisdiction over Plaintiff's real estate property, to permissioned a convicted felon to operate a security company and to cause Plaintiff to obey her court order by telling him that such action is and/or was allowed by law.

168. The harm suffered by Plaintiff was foreseeable and fairly direct since the danger of allowing Donnie Williams and Frontlines Finest, LLC access to Plaintiff's real estate property as a direct result exposed him to criminal offenses one of which would have been harboring a fugitive and in clear violation of the laws of New York State.

169. While Mr. Williams and Frontlines Finest, LLC occupied the real estate property, Plaintiff paid housing expense of approximately $40,000 and there was no existence of a contract or agreement between Mr. Williams and Plaintiff.

170. Plaintiff was not compensated for Mr. Williams' use and occupancy of his real estate property.

171. At the time of the acts of Dawson, she and Plaintiff had a special relationship, given that Plaintiff's person was under the jurisdiction of the Supreme Court but the real estate property was not under the jurisdiction of the Supreme Court.

172. Plaintiff is a discrete class of African-American real estate owner within the County of New York and a foreseeable victim and was subjected of the acts of Dawson and the potential harm brought about by her actions, as opposed to a member of the public in general.

173. Dawson affirmatively used her authority in a manner which created a danger to Plaintiff or rendered him more vulnerable than if the she had not acted at all.

174. As a result of the acts and omissions of Dawson, CITY and the STATE, the Plaintiff's substantive due process rights to be free from state-created dangers from a third-party were clearly established constitutional rights at the time of the events and a reasonable individual would have known that these acts and omissions would violate clearly established constitutional rights.

175. As a direct and approximate result of actions of Dawson, CITY and the STATE, Plaintiff has been and will be damaged as described herein.

## COUNT VII

31

**42 U.S.C. § 1983: Substantive Due Process - State-Created Danger**

**(Against Dawson, NYPD and CITY)**

176. Except as to the punitive damages allegations of the municipalities, Plaintiff repeats and re-alleges and incorporates by reference paragraphs 1- 175, with the same force and effect as though fully set forth herein.

177. The Fourth, Fifth and Fourteenth Amendments to the United States Constitution guarantees Plaintiff's the substantive due process right to be free from state-created dangers.

178. Dawson violated this right by taking affirmative steps to issue an Order of Protection against Plaintiff in that he should stay away from his real estate property.

179. As a direct result of the acts and omissions of Dawson, she ignored the real estate property laws and ordered that Plaintiff will be charged with a criminal violation of the protective order which is a criminal offense.

180. From January, 2009 and until October, 2012, Plaintiff stayed away from his real estate property and later, there comes a time, at which Plaintiff learned that the Order of Protection was void ab initio and had no effect:

    (a) *While an Order of Protection may include a directive to stay away from the home, school, business or place of employment of a victim or designated witness (CPL 530.13 [1] [a]), there is no provision in the statute which authorizes the issuance of an order of protection in favor of a place. To the contrary, the relevant legislative history reflects a clear intent to protect only people.*

181. On or about 31st day of July, 2012 and before the Judge Dawson, Plaintiff confronted and questioned her regarding the void Order of Protection. At about this time, Plaintiff was forced into foreclosure. Transcripts of hearing are available.

182. The conversation in court room had reached such contentious levels that Plaintiff feared that Dawson might engage in behavior designed to severely distort the record of the proceedings.

183. Furthermore, during numerous other proceedings before Dawson, Plaintiff felt threatened by the court officers who, on multiple occasions, stand directly next to Plaintiff at her command.

184. Thus, Plaintiff became so concerned for his safety and protection that he was determined to order transcripts of several court proceedings for preservation of the record.

185. The harm suffered by the Plaintiff was foreseeable and fairly direct since the danger of removing Plaintiff from his real estate property is and/or was a clear violation of his constitution rights.

186. Dawson owed an affirmative duty to care for and protect Plaintiff, she breached that duty and as a direct and approximate result, the breach was a substantial factor in causing the Plaintiff's harm.

187. Furthermore, there existed special relationships between Dawson and Plaintiff. Plaintiff is a discrete class of African-American real estate property owner and a foreseeable victim and was subjected of the acts of Dawson and the potential

harm brought about by her actions, as opposed to a member of the public in general.

188. Dawson affirmatively used her authority in a manner which created a danger to the Plaintiff or rendered the Plaintiff more vulnerable than if the she had not acted at all.

189. As a result of the conduct of Dawson, Plaintiff is entitled to monetary and punitive damages.

## COUNT VIII

### Defamation and Libel *Per Se*

### (Against Dawson)

190. Plaintiff repeats and re-alleges and incorporates by reference paragraphs 1- 189, with the same force and effect as though fully set forth herein.

191. Dawson either published, or caused to be published, defamatory statements about Plaintiff.

192. Specifically, these defamatory statements included a false assertion that Plaintiff "without permission from the court, and in contravention to the automatic stay orders of the court ....has committed fraud and he should be punished" (paraphrase quotations added).

193. These defamatory statements also included a false assertion that Plaintiff engaged in criminal and fraudulent activities to steal from creditors.

194. Dawson published these defamatory statements in a Decision and Order of Supreme Court to the public through the hardcopy, online, filed and dated 27th day of February, 2015.

195. Dawson's misconduct did not end with the above. Dawson made verbal defamatory statements that she knew were false, voidable and illegal by making it appear that Plaintiff undertook dishonest steps to sell his real estate property and knowingly violated the law. Transcript dated 31st day of July, 2012 contained the defamatory statements.

196. These statements of Dawson were untrue and defamatory in that she falsely reported the Plaintiff's character and actions, and she knew, or should have known, that such statements were false.

197. Dawson published these false and defamatory statements without privilege or authorization to a third party, constituting fault as judged by, at a minimum, a negligence standard, cause special harm or constitute defamation *per se*.

198. The public has infinite access to civil court documents and access included as part of any official and non-official background search process.

199. Dawson published these false and defamatory statements with malice.

200. Dawson published these false and defamatory statements with knowledge of their falsity and/or with the reckless disregard for the truth or falsity of these statements.

201. These statements of Dawson constituted defamation and/or libel *per se* because they falsely portray the Plaintiff as a thief and criminal which is and/was a serious charge.

35

202. These statements of Dawson constituted defamation and/or libel *per se* because they falsely impugn the Plaintiff's honesty, trustworthiness, dependability, and professional skills and abilities by falsely charging him with engaging in criminal conduct and/or other conduct that would tend to injure the Plaintiff in his trade or business, namely as a financial advisor.

203. These false and defamatory statements of Dawson have caused the Plaintiff embarrassment, humiliation and emotional and financial injury.

204. Dawson is and/or was liable to the Plaintiff for defamation.

205. Dawson knew, or should have known, of the falsity of such statements made in hardcopy and online editions of civil court document filed and dated 27th day of February, 2015.

206. Upon information and belief, Dawson have made, and continued to make, these and similarly false and defamatory statements about the Plaintiff to third parties. Upon information and belief, Joseph Burke, Esq.; published Dawson's defamatory statements in a hardcopy and online civil court document filed and dated 7th day of January, 2016.

207. As a result of the said defamation, the Plaintiff continued to suffer from humiliation, loss of income, loss of standing in the community loss of self-esteem, public disgrace and severe and extreme emotional distress.

208. As a result of the said defamation, the Plaintiff cannot find meaningful employment in the finance profession because a background check will reveal the defamatory statements.

209. The defamatory acts committed against the Plaintiff by Dawson was intentional, willful, wanton disregard, malicious and oppressive and were motivated, in part, by a desire to promote her position as a "tough and no-nonsense Judge" (quotations added) without regard for the truth or the Plaintiff's well-being and were based on lack of concern and ill-will towards the Plaintiff and/or a deliberate or reckless disregard for his rights, for which the Plaintiff is and/or was entitled to an award of punitive damages.

210. Plaintiff has suffered harm as a result of the defamatory statements including but not limited to, reputational harm, emotional distress and mental anguish and the statements were defamatory *per se*.

## COUNT IX

### Intentional Infliction of Emotional Distress

### (Against Dawson and STATE)

211. Plaintiff repeats and re-alleges and incorporates by reference paragraphs 1- 210, with the same force and effect as though fully set forth herein.

212. Dawson engaged in conduct toward Plaintiff that is extreme and outrageous so as to exceed the bounds of decency in a civilized society.

213. Among other conduct, Dawson's repeated false, scurrilous and defamatory statements published in hardcopy and online civil court document filed and dated 27th day of February, 2015 and 7th day of January, 2016 that the Plaintiff is and/was "engaged in criminal and fraudulent activities" when she knew, or

37

should have known about the falsity of those statements, constitutes extreme and outrageous conduct that exceeds the boundary of decency in a civilized society.

214. Dawson's defamatory statements are available to the public via the internet and a direct result, every search for the Dawson's defamatory statements provided infinite access from now and into the future.

215. In an Order and Decision of the Supreme Court by Dawson, dated 31st day of January 2013, she stated, "Plaintiff has not committed fraud" (paraphrase quotation added).

216. By the actions and conduct, Dawson intended to and did intentionally or recklessly cause the Plaintiff to suffer severe emotional and psychological distress.

217. As direct and proximate results of Dawson's conduct, Plaintiff has suffered, and continues to suffer, severe emotional and psychological distress, for which he is and/or was entitled to an award of damages.

218. Dawson's extreme and outrageous conduct was knowing, malicious, willful and wonton disregard, entitling the Plaintiff to an award of monetary and punitive damages.

## COUNT X

## 42 U.S.C. § 1983 and Fifth and Fourteenth Amendments

## (Against all individual Defendants)

**(Against Dawson and Ryneski)**

223. Plaintiff repeats and re-alleges and incorporates by reference paragraphs 1- 222, with the same force and effect as though fully set forth herein.

224. Dawson and Ryneski, under color of law, conspired with one another to deprive Plaintiff of his constitutional rights, including the rights: to be free from the intentional abuse of court procedures; to be free from unreasonable searches and seizures; to associate and speak freely; to have access to and seek redress in the courts; and to be free from false arrest, false imprisonment.

225. It was part of the conspiracy that Dawson and Ryneski did, among other acts, denial of every request of the courts to recalculate the child support and to seek redress in the courts in clear violation of Plaintiff's Fourth and Fourteenth Amendments rights.

226. In furtherance of the conspiracy and in order to cover-up errors of the misapplication of the laws - (i) Under the jurisdiction of the Court, an agreement between Dawson and Ryneski (ii) Dawson and Ryneski concurred and inflicted an unconstitutional injury to Plaintiff; (iii) an overt act done in furtherance of that goal causing damages;

   (a) Fabricate total income associated with the Plaintiff to ensure that the maximum amount of child support payments was sent to CSEU and the State's Treasury.

   (b) Falsify court records by removing the evidence of Plaintiff's house payments from the records.

40

(c) Remove court papers from the County Clerk's office official court documents.

(d) Corroborate their testimony and statements to deny Plaintiff access to court documents. On or about 29th day of June, 2016, Plaintiff sent certified letter to Chief Administrative Judge Milton A. Tingling to request a search for and access to court documents.

(e) Deny Plaintiff access to court documents. On or about 17th day of September, 2015, Plaintiff filed a motion in the Supreme Court to request access to court papers. Dawson denied the motion on 8th day October, 2015. Plaintiff was forced to appeal said decision.

(f) Upon review of recommendations of Ryneski, Dawson affirmed the false information contained in Findings of Fact on or about 30th day of January, 2015.

(g) Submit false, biased and void orders to the Court. On or about 27th day of February, 2015, Dawson issued an order that Plaintiff violated an automatic order of the Supreme Court. Upon further investigation, there is proof that the statement of Dawson was false.

(h) Held meeting and telephoned one another in an effort to share information and present a united front in face of any questioning.

227. As a direct and proximate result of the Clarke's unlawful actions, Plaintiff was damaged.

## COUNT XII

**42 U.S.C. §1983: Conspiracy**

**(Against Clarke and COMMISSIONER)**

228. Plaintiff repeats and re-alleges and incorporates by reference paragraphs 1- 227, with the same force and effect as though fully set forth herein.

229. Dawson and Clarke, under color of law, conspired with one another to deprive Plaintiff of his constitutional rights, including the rights: to be free from the intentional abuse of court procedures; to be free from unreasonable searches and seizures; to associate and speak freely; to have access to and seek redress in the courts; and to be free from false arrest, false imprisonment.

230. In furtherance of the conspiracy and in order to cover-up errors of the misapplication of the laws; (i) Under the jurisdiction of the Court, an agreement between Clarke and COMMISSIONER, (ii) Clarke and agents, employees of COMMISSIONER concurred and inflicted an unconstitutional injury to Plaintiff, (iii) an overt act done in furtherance of that goal causing damages;

    (a) On or about the 8th day of February, 2016, Plaintiff was summoned to Court by COMMISSIONER.

    (b) Plaintiff did not accept jurisdiction of Family Court. Clarke assumed Plaintiff had jurisdiction despite Decision of Magistrate Troy dated 20th day of January, 2015.

    (c) An Order of Money Judgment dated the 8th day of March, 2016 and issued by Clarke in which, child support payments in favor to COMMISIONER.

(d) In sum and substance, the Order of Money Judgment, dated the 8th day of
March, 2016 issued by Clarke against Plaintiff, in favor of
COMMISIONER for an amount of $26,000 (twenty-six thousand
dollars) and in an attempt to recoup funds based on an implied contract
between them.

(e) Upon information and belief, as a result of the acts and omissions of
Clarke, she created an environment wherein as the COMMISIONER will
collect and receive payments from Plaintiff indefinitely and eventually
these payments will be added to the Treasury of New York State.


## COUNT XIII

### 42 U.S.C. §1983: Conspiracy

231. Plaintiff repeats and re-alleges and incorporates by reference paragraphs 1- 230,
with the same force and effect as though fully set forth herein.

232. Dawson and Ryneski did, under color of law, conspire with one another to
deprive Plaintiff of his constitutional rights, including the rights to be free from
unreasonable seizure; to associate and speak freely; and to have access to and
seek redress from the courts.

233. In furtherance of this conspiracy to cover up the acts they engaged in the
following; (i) Under the jurisdiction of the Court, an agreement between
Dawson and Ryneski, (ii) Dawson and Ryneski concurred and inflicted an
unconstitutional injury to Plaintiff, (iii) an overt act done in furtherance of that
goal causing damages:

43

(a) On or about July 2010, Dawson issued an order of the Supreme Court to prevent Plaintiff to have access to his real estate property.

(b) On or about 17th day, September 2010 and while court was in session, Dawson issued a protective order to remove Plaintiff from his real estate property for a duration of 2 years. Upon further investigation, this protective order was void ab initio.

(c) On or about 19th day of July 2011, Ryneski ordered that Plaintiff should spend six months in jail.

(d) Circulating false and defamatory information concerning Plaintiff in an effort to discourage him from telling supervisory authorities and the courts that truth about what was done to him and to diminish the credibility of any information and testimony he did give.

(e) NYPD was notified of the order and warrant of arrest of Plaintiff.

## COUNT XIV

### 42 U.S.C. §1983 and Fourth and Fourteenth Amendments

### (Against Dawson, Rios, NYPD, and CITY)

234. Except as to the punitive damages allegations of the municipalities, Plaintiff repeats and re-alleges and incorporates by reference paragraphs 1- 233, with the same force and effect as though fully set forth herein.

235. By their conduct, as described herein, and acting under color of state law to deprive Plaintiff of his rights to be free from unreasonable searches and seizures

and arrest without reasonable suspicion or probable cause as required by the Fourth and Fourteenth Amendments, Defendants are liable for violation of 42 U.S.C. § 1983 which prohibits the deprivation under color of state law of rights secured under the United States Constitution.

236. On information and belief, CITY has, acting through its NYPD, developed, implemented, enforced, encouraged and sanctioned a de facto policy, practice, and/or custom of unlawfully interfering with and/or arresting without reasonable suspicion or probable cause, individuals who exercise their rights under the Fourth and Fourteenth Amendments.

237. As a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered, and will continue to suffer, damages including, physical, mental and emotional injury and pain, mental anguish, suffering, humiliation and embarrassment.

## COUNT XV

### 42 U.S.C. §1983: False Arrest and Imprisonment

### (Against Dawson, Rios and NYPD)

238. Except as to the punitive damages allegations of the municipalities, Plaintiff repeats and re-alleges and incorporates by reference paragraphs 1- 237, with the same force and effect as though fully set forth herein.

239. By their conduct, as described herein, and acting under color of state law to deprive the Plaintiff of his rights to be free from unreasonable searches and

seizures and arrest without reasonable suspicion or probable cause as required by the Fourth and Fourteenth Amendments, Defendants are liable for violation of 42 U.S.C. § 1983 which prohibits the deprivation under color of state law of rights secured under the United States Constitution.

240. On or about 10th day of May, 2009, Plaintiff was arrested for being in front of his real estate property.

241. Details of the incidents are in paragraphs 31 - 51.

242. As a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered, and will continue to suffer, damages including, physical, mental and emotional injury and pain, mental anguish, suffering, humiliation and embarrassment.

## COUNT XVI

### 42 U.S.C. § 1983 and Fourth and Fourteenth Amendments

### (Rios and NYPD)

243. Plaintiff repeats and re-alleges and incorporates by reference paragraphs 1- 242, with the same force and effect as though fully set forth herein.

244. By their conduct, as described herein, and acting under color of state law to deprive the Plaintiff of his rights to be free from excessive force in the course of an arrest as required by the Fourth and Fourteenth Amendments, the individual Defendants are liable for violation of 42 U.S.C. § 1983 which prohibits the deprivation under color of state law of rights secured under the United States Constitution.

46

The Defendants engaged in a cover-up of the arrest, the void Protective Order and to conceal the wrongful and unlawful conduct taken against Plaintiff. The Defendants' efforts to conceal the truth continue now and into the future to the detriment of Plaintiff.

245. As a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered, and will continue to suffer, damages including, physical, mental and emotional injury and pain, mental anguish, suffering, humiliation and embarrassment.

## COUNT XVII

### 42 U.S.C. § 1983 and Fourth and Fourteenth Amendments Excessive Force
### (Against Rios, NYPD and CITY)

246. Except as to the punitive damages allegations of the municipalities, Plaintiff repeats and re-alleges and incorporates by reference paragraphs 1- 245, with the same force and effect as though fully set forth herein.

247. By permitting, tolerating, and sanctioning a persistent and widespread policy, practice and custom pursuant to which African-Americans are subjected to a excessive force, CITY has and/or had deprived Plaintiff of rights, remedies, privileges and immunities guaranteed to every citizen of the United States, secured by 42 U.S.C. § 1983, including, but not limited to, the right to be free from gratuitous and excessive force guaranteed by the Fourth and Fourteenth Amendment to the United States Constitution.

248. CITY, through its NYPD, and acting under acting under color of state law, permitted, tolerated, and was deliberately indifferent to a pattern and practice of brutality by NYPD staff at the time of Plaintiff's arrest. This widespread tolerance of correction officer abuse of prisoners constituted a municipal policy, practice, or custom and led to Plaintiff's assault.

249. As a direct and proximate result of the policy, practice, and custom detailed above, Plaintiff sustained the damages described herein.

## COUNT XVIII

### 42 U.S.C. §1983: 42 U.S.C. § 1983 and Fifth and Fourteenth Amendments
### (All Defendants)

250. Except as to the punitive damages allegations of the municipalities, Plaintiff repeats and re-alleges and incorporates by reference paragraphs 1- 249, with the same force and effect as though fully set forth herein.

251. By their conduct, as described herein, Defendants are liable to Plaintiff under 42 U.S.C. § 1983 for the violation, under color of state law, of the constitutional right to be free from any deprivation of liberty without due process of law under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution.

252. As a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered, and will continue to suffer, damages including, physical, mental and emotional injury and pain, mental anguish, suffering, humiliation and embarrassment.

## COUNT XIX

### 42 U.S.C. §1983: 42 U.S.C. § 1983 and Failure To Intervene To Prevent Violation of Civil Rights

### (Against Dawson, Ryneski and NYPD)

253. Except as to the punitive damages allegations of the municipalities, Plaintiff repeats and re-alleges and incorporates by reference paragraphs 1- 252, with the same force and effect as though fully set forth herein.

254. By their conduct, as described herein, individual Defendants are liable to Plaintiff under 42 U.S.C. § 1983 for the violation, under color of state law, of the constitutional right to be free from any deprivation of liberty without due process of law under the Fourth and Fourteenth Amendments of the United States Constitution.

255. On said dates of events, times and locations as alleged herein, Dawson, Ryneski and each Supervisory police officers was in the position and authority to lawfully intervene in and prevent the unjustified and unwarranted arrest of Plaintiff.

256. At all times relevant herein and during all acts, conduct, failures and omissions relevant to Plaintiff's mistreatment, Supervisory police officers were present at said times and places as alleged and were charged with the Constitutional duties of the protection of Plaintiff and his rights, and other officers was charged with the duty to not knowingly, nor with wanton disregard, allow, permit, or fail to intervene in the wrongful and illegal acts of Rios and other said officers at the

49

scene and thereafter. Dawson and Ryneski knew or should have known of criminal acts by Rios and other unnamed officers.

257. On said dates of events, times and locations as alleged herein, Supervisory police officers had ample and reasonably sufficient time and opportunity to so intervene and prevent the wrongful conduct of the other officers, to prevent the violations against Plaintiff and to timely intercede, and indeed were compelled to do so as sworn police officers under the laws of the State of New York and under the Constitution of the United States of America.

258. On said dates of events, times and locations as alleged herein, Dawson and Ryneski were in the position and authority to lawfully intervene in and prevent the unjustified and unwarranted use of force toward Plaintiff.

259. On said dates, times and locations as alleged herein, in deliberate indifference to the life, rights, safety and welfare of Plaintiff, NYPD, Dawson and Ryneski intentionally and with deliberate indifference to the civil rights of Plaintiff, refrained from intervening in the acts leading to the use of false arrest and excessive force, and thereafter refrained from intervening so that Plaintiff would not be so subjected.

260. As a result thereof, Plaintiff, as alleged herein, was unjustifiably, purposely, recklessly and wantonly, and with deliberate indifference, exposed to the injuries, damages, and harm by individual Defendants as alleged herein.

261. The acts and omissions constituting this cause of action were purposeful, malicious, and reckless and wanton so as to justify the imposition of punitive

damages on these individual Defendants in their respective official and individual capacities.

## COUNT XX

### 42 U.S.C. §1985(3) Conspiracy with Racial Animus

### (All Defendants)

262. Except as to the punitive damages allegations of the municipalities, Plaintiff repeats and re-alleges and incorporates by reference paragraphs 1- 261 , with the same force and effect as though fully set forth herein.

263. The individual Defendants, under the color of law, conspired with each other to undertake a course of conduct to oppress, threaten, an intimate Plaintiff in the free exercise and enjoyment of the rights and privileges and equal protection of the law secured to him by the Constitution of the United States.

264. The conducts of Defendants were motivated by racial animus and by their desire to injure, oppress, threaten and intimidate Plaintiff because of his African-American race.

265. Defendants' racial and ethnic animus was expressed in racially and discriminatory orders directly in the false arrest report of Rios and other unnamed officers, in the decisions of Dawson in Supreme Court, directly by the Money Judgment by Clarke and directly in the Findings of Facts from Ryneski in Family Court.

266. In an order of the Family Court dated 8th day of June, 2011 Ryneski stated that Plaintiff should be sent to jail for a period of six months.

267. In a Decision and Order of the Supreme Court date 27th day of February 2015, Dawson state that Plaintiff violated an automatic order this court and therefore will result in criminal charges against Plaintiff.

268. In furtherance of the conspiracy, and to conceal the crimes and misconducts, Dawson, Ryneski, Rios, Clarke and employees of the respective agencies with the exception of the municipality, were willful participants engaged in a cover up.

269. Defendants were willful participants in joint actions, described herein, under color of law.

270. The foregoing acts of Defendants would not have occurred if Plaintiff was White European-American.

271. NYPD, CSEU, and COMMISSIONER, through its agents, employees and servants, were willful indirect and direct participants in joint actions and omissions of individual Defendants under color of law.

272. As a proximate and direct result of the Defendants' conducts, Plaintiff suffered injuries and damages described above.

**COUNT XXI**

**42 U.S.C. §1985(3): To Conspiracy to Hinder Provision of Equal Protection**

273. Plaintiff repeats and re-alleges and incorporates by reference paragraphs 1- 272, with the same force and effect as though fully set forth herein.

274. Individual Defendants conspired with each other and with the employees, agents and servants of CSEU, NYPD and COMMISSIONER, respectively, for the purposes of hindering and preventing the constituted authorities of the STATE from securing and providing Plaintiff equal protection of the laws.

275. In furtherance of the conspiracy, and to conceal the crimes and misconducts of all Defendants, with the exception of the municipalities, engaged in cover-ups.

276. Among the actions taken in furtherance were:

   (a) False statements made by Defendants to the courts that there are outstanding warrants against Plaintiff.

   (b) Made claims that Plaintiff was involved with domestic violence and placing his name in the public database of offenders.

   (c) Issuance of false charges, arrest warrants and Court orders against Plaintiff but not limited to falsifying incidents described herein.

277. As a proximate and direct result of Defendants' conducts, Plaintiff suffered the injuries and damages described herein.

## COUNT XXII

### 42 U.S.C §1985(2): Conspiracy to Impede Due Course of Justice

278. Plaintiff repeats and re-alleges and incorporates by reference paragraphs 1- 277, with the same force and effect as though fully set forth herein.

279. Each of the individual Defendants conspired, along with the additional agents and employees of NYPD, CSEU and COMMISSIONER, to impede the due

course of justice in New York State, with the intent to deny Plaintiff the equal protection under the laws.

280. As a proximate and direct result of Defendants' conducts, Plaintiff suffered the injuries and damages described above.

## COUNT XXIII

### 42 U.S.C. §1986 Action for Neglect to Prevent

281. Plaintiff repeats and re-alleges and incorporates by reference paragraphs 1- 280, with the same force and effect as though fully set forth herein.

282. Upon information and belief, all Defendants had knowledge that a 42U.S.C. § 1985(3) conspiracy was in progress, had the power to prevent or aid in preventing the conspiracy from continuing and neglected or refused to do so.

283. With reasonable diligence, individually and collectively, Defendants could have and/or should have promptly reported the brutality to superiors and to duly authorized personnel. Their failure contributed to Plaintiff's suffering gratuitously at the hands of all Defendants as described in Plaintiff's complaint letters described herein.

284. Had the individual Defendants complied with the law and furnished truthful information to supervisors within the respective agencies, the §1985(3) conspiracy would not have succeeded to the extent that it did and continued to now and into the future.

285.  As a proximate and direct result of Defendants' conducts, Plaintiff suffered the injuries and damages described herein.

## COUNT XXIV

### 42 U.S.C. §1983 Supervisory Liability

286.  Plaintiff repeats and re-alleges and incorporates by reference paragraphs 1- 285, with the same force and effect as though fully set forth herein.

287.  At all relative times, Supervisory personnel within the respective municipalities and agencies, including NYPD, with oversight responsibility were responsible for the training, instruction, supervision, and discipline of the individual Defendants, an accessory after the fact.

288.  Upon information and belief, Supervisory personnel within the respective CITY and STATE agencies received complaints about the conduct of individual Defendants, knew about the letters of complaint herein, or, in the exercise of due diligence, would have perceived that each individual Defendants posed a pervasive and unreasonable risk of harm to Plaintiff.

289.  Supervisory personnel, or in the exercise of due diligence would have known, that the conducts of individual Defendants against Plaintiff were likely to occur.

290.  It is believed that Supervisory personnel failed to take preventative and remedial measures to guard against the cover-up committed by individual Defendants. Had Supervisory personnel take appropriate action, Plaintiff would not have been injured.

291. The failure of these Supervisory personnel to supervise and discipline individual Defendants amounted to gross negligence, deliberate indifference, or intentional misconduct which directly caused the deprivations suffered by Plaintiff.

## COUNT XXV

### 42 U.S.C. §1983: Systemic Claim

### (Against CITY, CSEU AND COMMISSIONER)

292. Plaintiff repeats and re-alleges and incorporates by reference paragraphs 1- 291, with the same force and effect as though fully set forth herein.

293. The NYPD, COMMISSIONER, CSEU and CITY have developed and maintained policies and customs exhibiting deliberate indifference to the constitutional rights of citizens, which caused the violations of Plaintiff's Fourth and Fourteenth Amendments rights.

294. COMMISSIONER and CSEU have been on notice for their aggressive tactics of deliberate indifference to constitutional rights of citizens to garnish paycheck even when child support calculations are incorrect from non-custodial parents.

295. No citizen is immune to punishment for failure to pay child support wherein as citizens can be fined, jailed and arrest warrants issued against them according to the Deadbeat Parents Punishment Act.

296. The United States Department of Justice ('The Department') has recently released a detailed letter outlining the injustices that have been applied towards the economically less fortunate citizens of the United States. According to Vanita Gupta, and Lisa Foster of the Civil Rights Division, and the Office for

Access to Justice, respectively, this Department letter is intended to address some of the most common practices that have run afoul of the United States Constitution.

297. Unsurprising to some child support reform advocates, many of the constitutional violations are directly related to the punishments related to owing child support debt. These outlined desecrations are ones that have been objected to by those fighting for reform and equal protections for those entangled in child support cases across the nation. Recent years have seen increased attention to illegal enforcement of fines and fees in certain jurisdictions around the country, (Gupta and Foster, 2016).

298. The Department of Justice ('DOJ') addresses the incarceration of people when they are indigent and cannot afford the overstated fines and monetary penalties. Based on writings in the letter, courts must not incarcerate a person for nonpayment of fees and fees without conducting an indingency determination, (Grupta & Fisher, 2016). There have been hundreds, if not thousands, of cases involving people being incarcerated due to owing a child support debt even though it had not been proven that he or she has 'willfully' failed to pay the debt. There is certain protocol that must be followed before arrest warrants are issued. Unfortunately, when child support 'deadbeat' roundups are executed upon parents (some non-parents), there is seldom any mention of the financial status of the arrested party or if there was an indigency hearing conducted prior to sentencing.

299. In the *Bearden v. Georgia* decision of 1983, it was decided that the due process and equal protection principles under the Fourteenth Amendment prohibit "punishing a person for his poverty." (Grupta & Foster, 2016).

300. As has been proven in many child support cases that have ended in arrests, most people detained are not criminals. They are just poor. More proof is provided when comparing the low amount of child support that is actually collected as a result of the child support raids to the amount due. The circuit collects about five million dollars in child support each year, (Jones, 2016). However, a mere $30,000 may be the bounty collected after child support busts and this is only an average. This amount can decrease based on how poor the arrestee is and how he or she is able to produce the money needed in order to purchase their freedom.

301. CITY has been on notice for more than a generation that brutality, coercions and threats of incarcerations from the NYPD were widespread and that particular reforms need to be implemented.

302. The *Mollen Commission* reported that tolerance or willful blindness, extended throughout NYPD because many employees share the perception that nothing is really wrong with a bit of unnecessary force and the belief that this is the only way to fight crime.

303. Such practices, as to the *Mollen Commission*, should sound an alarm throughout the NYPD.

304. As a direct and proximate result of the CITY, STATE, COMMISSIONER and other municipalities' policies and their deliberate indifference, Defendants

violated Plaintiff's constitutional rights for which he suffered substantial damages.

## COUNT XXVI

### 42 U.S.C. §1983: Conspiracy

### (CITY, NYPD, CSEU and COMMISSIONER)

305. Plaintiff repeats and re-alleges and incorporates by reference paragraphs 1- 304, with the same force and effect as though fully set forth herein.

306. Acting jointly over a period of many years, the CITY and NYPD together established policies and customs which allow even the most brazenly deprivation of constitutional right to believe that they can use excessive force with impunity.

307. This conspiracy between the CITY and NYPD and CSEU and COMMISSIONER is ultimately responsible for, and the proximate and direct cause of the violation of Plaintiff's rights and the extraordinary injuries that ensued as described herein.

## COUNT XXVII

### Pendent Claim of Gross Negligence and Negligence

### (All Defendants)

308. Plaintiff repeats and re-alleges and incorporates by reference paragraphs 1- 307, with the same force and effect as though fully set forth herein.

309. The NYPD, CSEU and COMMISSIONER knew or should have known that their policies and practices have contributed to improper concealment of misconduct and to cover-up actions by individual Defendants and unnamed employees within the respective agencies.

310. The NYPD, CSEU and COMMISSIONER knew or should have known that their policies and practices, as well as their grossly negligent and negligent supervision and training of their agents, employees, created an atmosphere where the individual Defendants felt assured that their most brazen acts of misconduct would not be swiftly and effectively investigated and prosecuted.

311. The mistreatment of Plaintiff described herein and previously set forth, and the subsequent cover-up of those events, was reasonably foreseeable results of all individual Defendant's negligent conduct.

## COUNT XXVIII

### Pendent Claim Of Assault and Battery

### (Against Rios and NYPD)

312. Plaintiff repeats and re-alleges and incorporates by reference paragraphs 1- 311, with the same force and effect as though fully set forth herein.

313. By their actions, as set forth herein, Rios and other unnamed officers' acts of battery against Plaintiff which included the use of physical force against Plaintiff were unnecessary and excessive.

314. The CITY is responsible for the threats and the excessive and unnecessary physical force used by Rios and other unnamed officers because the misconduct

occurred while they were acting in the scope of their employment, specifically in the course of arresting Plaintiff, and while they were executing their responsibility to hold him safely and free from harm in police custody at the 30th Precinct.

315. As a result of these the excessive and unnecessary physical force used against him, Plaintiff suffered serious psychological, emotional and mental injuries.

## COUNT XXIX

## PENDANT CLAIMS OF FALSE ARREST AND FALSE IMPRISONMENT

### (Against Dawson and Rios)

316. Plaintiff repeats and re-alleges and incorporates by reference paragraphs 1- 315, with the same force and effect as though fully set forth herein.

317. By their actions, as set forth above, Rios committed atrocious acts of battery against Plaintiff as described herein.

318. This use of physical force against Mr. Plaintiff as an African-American was unnecessary and excessive.

319. CITY is responsible for the threats and the excessive and unnecessary physical force used by Rios and other unnamed officers because the misconduct occurred while they were acting in the scope of their employment, specifically in the course of arresting Plaintiff, and while they were executing their responsibility to hold him safely in police custody at the 30th precinct and sometime later in the prison cell in basement of the Supreme Court.

61

320. As a result of these excessive and unnecessary physical force used against him, Plaintiff is damaged described herein and he suffered severe and serious physical, emotional and mental injuries.

## COUNT XXX

### PENDENT CLAIMS OF INTENTIONAL AND

### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

### (Against all Defendants)

321. Plaintiff repeats and re-alleges and incorporates by reference paragraphs 1- 320, with the same force and effect as though fully set forth herein.

322. In the course of the incidents describe herein, individual Defendants embarked on a malicious, willful, and grossly negligent course of conduct intended to cause Plaintiff to suffer extreme mental and emotional distress, agony, and anxiety.

323. One objective of this extreme and outrageous course of conduct was to inflict severe mental and emotional distress upon Plaintiff so as to intimidate, terrify, and dissuade him from exposing the events and abuse inflicted upon him and the unconscionable delays and denial justice he endured as an African-American citizen.

324. Defendants Dawson, Rios and unnamed police officers intentionally, recklessly or negligently caused Plaintiff to suffer mental and emotional distress by impeding and obstructing the exposure of the false arrest, the battering and

imprisonment he endured, and the wanton delay during the many months of criminal trials he experienced.

325. Upon information and belief, Dawson, Ryneski and Clarke pursued a malicious campaign to inflict mental and emotional distress upon Plaintiff by spreading false statements in hardcopy and filed court papers from February 2009 and until present day. These false and defamatory statements, as these individual Defendants knew or should have known caused Plaintiff humiliation and ridicule and harm.

326. Plaintiff asserts a claim for intentional infliction of emotional distress from Dawson herein and elsewhere within this complaint:

   (a) Extreme and outrageous conduct, measured by the reasonable bounds of decency tolerated by society; separate from the false arrest Plaintiff described herein, Dawson handed over access of Plaintiff's real estate property to a convicted felon Mr. Donnie Williams and Frontlines Finest LLC without permission or authority.

   (b) Dawson intent to cause, or disregard of a substantial probability of causing, severe emotional distress by allowing Mr. Williams to conduct commercial business on the real estate property while knowing that Plaintiff will incur the liability for Mr. Williams' business transactions.

   (c) Dawson created a direct connection between her conduct and the injury to force Plaintiff to pay expenses on his real estate property and she provided no safe-guards to ensure compensation from Mr. William to Plaintiff.

63

(d) Dawson caused severe emotional distress to Plaintiff in that, at any time, she should have known that felons cannot operate security corporations and that Plaintiff maybe held liable for all issues arising from said transactions between Mr. Williams, Frontlines Finest, LLC and the public at large.

327. Plaintiff asserts a claim for intentional infliction of emotional distress herein from Clarke and elsewhere in this complaint:

(a) Extreme and outrageous conduct, measured by the reasonable bounds of decency tolerated by society; separate from the false arrest Plaintiff described herein, Clarke assumed and procured jurisdiction of the matter against Plaintiff in order to provide the STATE an advantage, despite the Decision of Magistrate Troy.

(b) Clarke intended to cause or disregard of a substantial probability of causing, severe emotional distress by allowing the STATE to charge Plaintiff a money judgment in the amount of $26,000.

(c) Clarke created a causal connection between her conduct and the injury by forcing Plaintiff to pay money to the STATE or else suffer consequences of bad credit record and the possibility of arrest and jail time.

(d) Clarke caused severe emotional distress to Plaintiff in that at any time, Plaintiff employer will be directed to garnish Plaintiff's paycheck and cause Plaintiff to limit his career advancement and the possibility of termination.

328. The aforesaid acts of intentional, reckless and negligent infliction of emotional and mental distress by Defendants constitute misconduct of an egregious nature that exceeded all bounds usually tolerated by a civilized society.


## COUNT XXXI

### Pendent Claims of Making An Injurious False Or Fraudulent Statement

### (Against Dawson, Ryneski, Clarke and Rios)

329. Plaintiff repeats and re-alleges and incorporates by reference paragraphs 1- 328, with the same force and effect as though fully set forth herein.

330. Individual Defendants had an obligation to accurately and reliably report information that would be relevant to Plaintiff care and treatment.

331. Dawson added Plaintiff's address on the arrest warrant knowing or should have known that an order of protection does not consist of any provision to regarding the owners of real estate property. Nevertheless, Plaintiff endured long criminal trial as described above.

332. Rios failed in his duty to verify and confirm that the arrest warrant was not valid or voidable. Nevertheless and upon information and belief, the arrest of Plaintiff would be added to Rios' arrest quota.

333. Ryneski falsified the evidence of Plaintiff's housing expenses from the calculation of the child support obligation. Nevertheless and upon information and belief, Ryneski ensured that Plaintiff was charged with maximum child support obligation according to law. This conduct by Ryneski ensures that the

Treasury of New York State received the maximum reimbursement from the SSA program.

334. The false and defamatory information provided by individual Defendants caused fear, pain and financial anguish in Plaintiff and as a direct and proximate result, Plaintiff was damaged as described herein.

## COUNT XXXII

### Pendent Claims of Gross Negligence and Negligence and Intentional and Negligent Infliction of Emotional Distress

### (All Defendants)

335. Plaintiff repeats and re-alleges and incorporates by reference paragraphs 1- 334, with the same force and effect as though fully set forth herein.

336. Dawson, Ryneski, Rios and Clarke were grossly negligent and negligent in that they had a duty to care for Plaintiff which they violated by providing false information and by failing to take steps that an ordinarily reasonable and prudent person in similar profession would have pursued to care and protect Plaintiff.

337. Dawson, Ryneski, Rios and Clarke knew or should have known that their false information created an unreasonable risk of physical and emotion harm and did cause Plaintiff mental distress and anguish.

338. As a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered, and will continue to suffer, damages including, physical, mental and emotional injury and pain, mental anguish, suffering, humiliation and embarrassment.

## COUNT XXXIII

### 42 U.S.C. § 1983 and Fourth and Fourteenth Amendments

### (All Defendants)

339. Plaintiff repeats and re-alleges and incorporates by reference paragraphs 1- 338, with the same force and effect as though fully set forth herein.

340. By their conduct, as described herein, and acting under color of state law, Defendants are liable to Plaintiff under 42 U.S.C. § 1983 for the violation, of his constitutional right to be free from malicious prosecution under the Fourth and Fourteenth Amendments to the United States Constitution.

341. Defendants' unlawful actions were done willfully, knowingly, with malice and with the specific intent to deprive Plaintiff of his constitutional rights. The prosecution by Defendants of Plaintiff constituted malicious prosecution in that there was no basis for the Plaintiff's arrest, yet Defendants continued with the prosecutions, which were resolved in Plaintiff's favor.

342. As a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered, and will continue to suffer, damages including, physical, mental and emotional injury and pain, mental anguish, suffering, humiliation and embarrassment.

## COUNT XXXIV

### Monell Claim Under 42 U.S.C. § 1983

### (Against CITY)

67

343. Plaintiff repeats and re-alleges and incorporates by reference paragraphs 1- 342, with the same force and effect as though fully set forth herein.

344. At all relevant times herein, CITY, acting through its NYPD, developed, implemented, enforced, encouraged and sanctioned de facto policies, practices, and/or customs exhibiting deliberate indifference to the Plaintiff's constitutional rights which caused the violation of such rights.

345. Defendants' unlawful actions were done willfully, knowingly and with the specific intent to deprive Plaintiff of his constitutional rights under the First, Fourth, Fifth and Fourteenth Amendments to the U.S. Constitution.

346. The constitutional abuses and violations by CITY, through the actions of its NYPD police officers, are and/or were directly and proximately caused by policies, practices and/or customs developed, implemented, enforced, encouraged and sanctioned by CITY, including the failure: (a) to adequately supervise and train its officers and agents, including the Defendants, thereby failing to adequately discourage further constitutional violations on the part of its police officers; (b) to properly and adequately monitor and discipline its officers, including Defendants; and (c) to adequately and properly investigate citizen complaints of police misconduct, and, instead, acts of misconduct were tolerated by the CITY.

347. Upon information and belief, CITY has, acting through its NYPD, developed, implemented, enforced, encouraged and sanctioned a de facto policy, practice, and/or custom of unlawfully interfering with and/or arresting, without

reasonable suspicion or probable cause, individuals who exercise their rights under the Fourth Amendment.

348. At all times relevant herein, Rios and other unnamed officers, inclusive, were supervisors and/or policy makers for the NYPD, which through gross negligence and indifference to the Constitutional rights of citizens, employed, maintained and permitted an official policy and custom of permitting, allowing, ratifying and condoning the occurrence of the types of wrongs and misconducts set forth herein, particularly, the use of excessive force against other persons including Plaintiff. Said misconduct was encouraged, tolerated and condoned by said police officers.

349. On the date of Plaintiff's arrest and the false reporting of the said arrest as alleged herein, Rios and other unnamed officers, acting within the course and scope of their duties as police officers of NYPD, deprived Plaintiff of his rights to be free from unreasonable seizure as delineated herein above, and thereafter in violation of Plaintiff's due process rights, proceeded to falsify, fabricate, conceal and alter evidence, and submit false police reports so that Plaintiff would be found guilty.

350. Said policies, procedures, customs, and practices called for the CITY and its NYPD not to discipline, prosecute, or objectively and/or independently investigate, or in any other way, deal with or respond to known incidents and complaints of falsification of evidence, the preparation of false police reports to justify such wrongful conduct, the covering up and concealing of such wrongful conduct by the NYPD, and the failure to objectively and/or independently

investigate, or in any other way, deal with or respond to the related claims and lawsuits made as a result of such false charges and related misconduct.

351. Said policies, procedures, customs, and practices called for and led to the refusal of CITY and NYPD to investigate complaints of previous incidents of the filing of false police reports to conceal excessive force misconduct, the falsification of evidence and perjury and, instead, officially claim that such incidents were justified and proper.

352. Said policies, procedures, customs, and practices called for police officers, by means of inaction and cover-up, to encourage an atmosphere of lawlessness within the NYPD, and to encourage their police officers to believe that the use of excessive force on residents of New York City or persons present therein, including persons falsely accused, the submission of false police reports, and the commission of perjury was permissible, and to believe that unlawful acts of falsification of evidence and perjury would be overlooked without discipline or other official ramifications.

353. Said policies, procedures, customs, and practices of NYPD have evidenced a deliberate indifference to the violations of the constitutional rights of Plaintiff. This indifference was manifested by the failure to change, correct, revoke, or rescind said policies, procedures, customs, and practices in light of prior knowledge by said police officers and their subordinate policymakers of indistinguishably similar incidents of unjustified and unreasonable and unlawful force, falsification of evidence, submission of false police reports, and perjury.

70

354. Deliberate indifference to the civil rights of the Plaintiff and other victims of the NYPD officers, including the use of unreasonable and excessive force, falsified evidence, false and misleading police reports, and false and perjurious testimony was also evidenced by police officers by their ignoring of the history and pattern of prior civil lawsuits alleging civil rights violations, similar to those alleged herein, arising from such misconduct and the related payment of judgments to such individuals.

355. Rios and other officers' unlawful actions were done willfully, knowingly and with the specific intent to deprive Plaintiff of his constitutional rights under the First, Fourth, Fifth and Fourteenth Amendments to the U.S. Constitution.

356. Rios and other unnamed officers have acted with deliberate indifference to the constitutional rights of Plaintiff. As a direct and proximate result of the acts as stated herein by each of the police officers, the Plaintiff's constitutional rights have been violated which has caused him to suffer physical, mental and emotional injury and pain, mental anguish, suffering, humiliation and embarrassment.

357. In 1999, the Center for Constitutional Rights filed a class action lawsuit, in the matter of Daniels, et al. v. The City of New York, et al., Case No. 99 Civ. 1696 in the Southern District of New York to challenge the NYPD's unconstitutional policy, practice and/or custom of conducting rampant stops and frisks of individuals without the reasonable articulable suspicion required under the Fourth Amendment and which impermissibly used race and/or national origin –

71

not reasonable suspicion –as the determinative factors in deciding to stop and frisk individuals.

358. In 2003, a settlement of the case was reached which resulted in a Stipulation that required, inter alia, the NYPD to adopt a written policy prohibiting unlawful racial profiling. The Stipulation also required the NYPD to produce quarterly data concerning the NYPD stop and frisk activity which is contained in its UF-250 forms. During the pendency of the lawsuit, the NYPD claimed it have disbanded the SCU, however, the unlawful practices perfected by the NYPD through the SCU have continued, through other methods, as part of the NYPD's anti-crime Strategy.

359. Although Plaintiff does not make clear which officers failed to intervene, he has properly alleged at least one constitutional violation and is entitled to discovery to determine which officers participated directly in the alleged constitutional violation and which officers were present and failed to intervene.

360. The underlying purpose of the statute may be served without requiring a Plaintiff to name the individual agents, officers or employees in the notice of claim or complaint.

361. Plaintiff adopts the *Goodwin* Court's well-reasoned conclusion that there is no requirement that individual Defendants be specifically named in the Notice of Claim. *Goodwin v. Pretorius, 105 A.D.3d 207, 216, 962 N.Y.S.2d 539, 546 (4th Dep't 2013).*

362. Plaintiff is informed and believes, and therein alleges that these customs, practices and policies were the moving force behind the violations of Plaintiff's

rights. Based upon the principles set forth in ***Monell v. New York Dept. Of Social Services***, CITY is liable for all of the injuries and damages sustained by Plaintiff as set forth herein.

## COUNT XXXV

### New York State Common Law Malicious Prosecution

### (Against all Defendants)

363. Except as to the punitive damages allegations of the municipalities, Plaintiff repeats and re-alleges and incorporates by reference paragraphs 1- 362, with the same force and effect as though fully set forth herein.

364. By their conduct as described herein, Defendants are liable to Plaintiff for having committed malicious prosecution under the laws of the State of New York.

365. Defendants maliciously commenced criminal proceedings against Plaintiff, charging him with violation of protective order of the Supreme Court of the State of New York

366. Upon information and belief, Rios and other unnamed officers, without probable cause, introduced additionally charges against Plaintiff for violations of the laws of the State of New York.

367. The commencement and continuation of criminal proceedings against Plaintiff was malicious and without probable cause starting approximately from February 2009 through until March 2012.

368. Plaintiff's information was placed in the warrant database wherein as his personally identifiable information was transmitted to the internet.

369. Defendants submitted and transmitted Plaintiff's personally identifiable information to aggregators whom displayed this information on the internet.

370. Aggregators display Plaintiff information on a searchable database wherein as the public search and review Plaintiff's personally identifiable information.

371. All charges were terminated in Plaintiff's favor on or about 10th day of March, 2010 and Plaintiff paid $10 (ten dollars) to the County Clerk to get a copy of the certification of disposition.

372. Aggregators continue to display Plaintiff's personally identifiable information on a searchable database wherein as the public shall search and review this information which maligned his character from now and forever.

373. Rios in his individual and official capacity of officer, agent, servant and employee was responsibility for the malicious prosecution of Plaintiff.

374. As a direct and approximate result, Plaintiff suffered significant trauma, mental anguish, shock and fright, debasement and humiliation as a result of being publicly arrested without any cause, and assaulted, unlawfully imprisoned and maliciously prosecuted and deliberately caused significant financial injury to him.

375. As a direct and proximate result of the misconduct and abuse of authority stated herein, Plaintiff sustained the damages alleged herein.

376. Defendant CITY, as an employer of Rios and other individual police officers is responsible for their wrongdoing to Plaintiff and as a direct and approximate result of these acts; Plaintiff has been damaged as described herein.

## COUNT XXXVI

### Article I, Section 11 of New York State Constitution

### (Against all Defendants)

377. Plaintiff repeats and re-alleges and incorporates by reference paragraphs 1- 376, with the same force and effect as though fully set forth herein.

378. The acts of Defendants, acting under color of law, in arresting Plaintiff and in physically assaulting Plaintiff were racially motivated and were done without lawful justification, and were designed to and did cause specific and serious bodily harm, pain and suffering to the Plaintiff in violation of his Constitutional rights to equal protection as guaranteed by Article I, Section II of the Constitution of the State of New York.

379. The foregoing acts and conduct of Defendants were a direct and proximate cause of injury and damage to Plaintiff and violated his rights as guaranteed by the Constitution of the State of New York.

380. As a direct and approximate result of the acts of Defendants, Plaintiff has been damaged as described herein.

## COUNT XXXVII

### Article I, Section 12 of New York State Constitution

75

**(Against all Defendants)**

381. Plaintiff repeats and re-alleges and incorporates by reference paragraphs 1-380, with the same force and effect as though fully set forth herein.

382. The acts of Defendants, acting under color of law, in subjecting Plaintiff to unlawful search and seizure, arrest and excessive force by physically assaulting Plaintiff was done without reasonable suspicion or probable cause and were designed to, and did cause, specific and serious bodily harm, pain and suffering to the Plaintiff in violation of his Constitutional rights as guaranteed by Article I, Section 12 of the Constitution of the State of New York.

383. The foregoing acts and conduct of individual Defendants were a direct and proximate cause of injury and damage to Plaintiff and violated his rights as guaranteed by the Constitution of the State of New York.

## COUNT XXXVIII

### Pendent Claim of Prima Facie Tort

384. Plaintiff repeats and re-alleges and incorporates by reference paragraphs 1- 383, with the same force and effect as though fully set forth herein.

385. At all times relevant to this action, Plaintiff was and is entitled to the benefits of an American citizenship.

386. By the actions of all individual Defendants set forth above, they intentionally inflicted harm upon Plaintiff without excuse or justification and out of disinterested malevolence.

387. By reason of the foregoing conduct by individual Defendants, Plaintiff was deprived of the comfort and enjoyment of the services and society which are guaranteed to him under the laws and Constitution of the State of New York and can be adjudicated in this litigation under the Court's supplementary jurisdiction. Moreover, Defendants' conduct undermined Plaintiff's liberty interest in preserving the integrity and stability of the ownership of his real estate property from intervention by the state without due process of law.

388. By virtue of the foregoing, Defendants deprived Plaintiff of clearly established rights protected by the due process clause under the First, Fourth, Fifth, and Fourteenth Amendment and the right to basic life necessities and services consistent with the exercise of reasonable professional judgment from state personnel.

389. As a direct and approximate result of the acts of all Defendants, Plaintiff had been damaged without excuse or justification and out of disinterested malevolence as described herein.

## COUNT XXXIX

### PENDENT CLAIM - RESPONDEAT SUPERIOR

390. Plaintiff repeats and re-alleges and incorporates by reference paragraphs 1- 389, with the same force and effect as though fully set forth herein.

391. The conduct of Rios occurred while he was on duty and during the course and scope of their duties and functions as NYPD officer and while he was acting as

agents and employees of the CITY. Defendant CITY is liable to Plaintiff under the common law doctrine of *Respondeat Superior* for Rios tortious actions.

392. The conduct of Dawson occurred while she was on duty and in robe, on the bench, in and during the course and scope of her duties and functions as Judge and while she was acting as agent and employee of the STATE. Defendant STATE is liable to Plaintiff under the common law doctrine of *Respondeat Superior.*

393. The conduct of Ryneski occurred while he was on duty and during the course and scope of his duties and functions as Magistrate and while he was acting as agent and employee of the STATE. Defendant, STATE is liable to Plaintiff under the common law doctrine of *Respondeat Superior.*

394. The conduct of Clarke occurred while she was on duty on the bench, in and during the course and scope of his duties and functions as Magistrate and while he was acting as agent and employee of the STATE. Defendant, STATE is liable to Plaintiff under the common law doctrine of *Respondeat Superior.*

395. Individual Defendants' conduct was a substantial factor in causing Plaintiff to suffer damages described herein. The amount of special damages claimed by Plaintiff will be sought according to proof at the time of trial.

**WHEREFORE**, Plaintiff respectfully requests the following relief individually, jointly and severally as against all Defendants:

78

a) Award compensatory and general damages in an amount of 10 million dollars but not limited to any emotional distress, and any other compensatory damages as permitted by law and according to proof at trial;

b) Award punitive or exemplary damages where alleged against individual Defendants, except municipalities, in an amount of no less than 10 million dollars and/or an amount greater than to be determined at trial;

c) Award court fees and attorneys' fees pursuant to 42 U.S.C. §1988;

d) Award costs of suit incurred herein pursuant to 42 U.S.C. §1920 and 1988; and,

e) Award such other and further relief as the Court deems just and proper.


Dated: New York, New York
       August, 25, 2016

Chris H.,
Plaintiff Pro-Se
289 Convent Avenue
New York, NY 10031


Sworn to before me
___30___ day of August, 2016.

LINDA L. FORMAN
Notary Public, State of New York
No. 01FO5031305
Qualified in New York County
Commission Expires August 1, 2018

79

# Exhibit A

Form **COL**

**Violation Warning**
**Denial of Rights Under Color of Law**

▶ Violation Warning—18 U.S.C. §242; 18 U.S.C. §245; 42 U.S.C. §1983

Name and address of Citizen
*Chris. Henry*
*C/o 289 Convent Ave*
*NY NY 10031*

Name and address of Notice Recipient
*Mr. Paul Ryneski*
*Support Magistrate*
*Family Court, 60 Lafayette St.*
*New York, NY 10013*

Citizen's statement:
*Herein Notice and Intent*
*Sworn to me re me 4/3/13*

I certify that the forgoing information stated here is true and correct.

Citizen's signature

NRA FORMAN
Notary Public, State of New York
No. 01FO6031306
Qualified in New York County
Commission Expires August 1, ....

▶ *Chris Henry*   *Not 4* Date ▶ *4/3/13*

**Legal Notice and Warning**

**Federal law provides that it is a crime to violate the Rights of a citizen under the color-of-law. You can be arrested for this crime and you can also be held personally liable for civil damages.**

Attempting to cause a person to do something by telling that person that such action is required by law, when it is not required by law, may be a felony.

18 USC §242 provides that whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any person in any State, Territory, Commonwealth, Possession, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States ... shall be fined under this title or imprisoned not more than one year, or both.

18 USC §245 provided that Whoever, whether or not acting under color of law, intimidates or interferes with any person from participating in or enjoying any benefit, service, privilege, program, facility, or activity provided or administered by the United States; [or] applying for or enjoying employment, or any perquisite thereof, by any agency of the United States; shall be fined under this title, or imprisoned not more than one year, or both.

42 USC §1983 provides that every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

**Warning,** you may be in violation of Federal Law and persisting with your demand may lead to your arrest and/or civil damages! Also understand that the law provides that you can be held personally responsible and liable, as well as your company or agency.

**You are advised** to cease and desist with your demand and to seek *personal* legal counsel if you do not understand the law.

Notice of Service:

I, _____ certify that I personally delivered this notice to above named recipient and address on _____ at _____.

Public Domain—Privacy Form COL(01)

Exhibit B

## CRIMINAL COURT OF THE CITY OF NEW YORK
## COUNTY OF NEW YORK

Page 1 of 1

THE PEOPLE OF THE STATE OF NEW YORK
-against-

1. Christopher Henry

ECAB #
996893

Defendant.

FAMILY OFFENSE
DEFENDANT/VICTIM
RELATIONSHIP:
SPOUSE

MISDEMEANOR
ADA CHOKSHI
212-335-4298

Detective Orlando Rios, shield 05241 of the 030 Detective Squad, states as follows:

On May 10, 2009, at about 12:45 hours in front of 453 West 143rd Street in the County and State of New York, the Defendant committed the offenses of:

1.   PL215.50(3)    Criminal Contempt in the Second Degree
(1 count)

the defendant engaged in intentional disobedience to the lawful mandate of a court in other than a labor dispute.

The offenses were committed under the following circumstances:

Deponent states that deponent is informed by Marisa Henry, of an address known to the District Attorney's Office, that informant observed defendant in front of her home at the above location.

Deponent further states (i) that the above actions by defendant are in violation of an order of protection issued on April 2, 2009 by Judge Stephen, docket number 2009NY016481, and which remains in effect until May 21, 2009, (ii) that the order of protection directs the defendant to stay away from the home of Marisa Henry-Soto, and (iii) that defendant is aware of the order of protection in that defendant was present in court when the court order was issued and the order of protection is signed by the defendant.

**False statements made herein are punishable as a class A misdemeanor pursuant to section 210.45 of the penal law.**

Det. _____
Deponent

5/31/09
Date and Time

ACT 5 Version 4.3.0 Created on 05/31/09 5:45 PM