```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                             :
CHRIS H.,                                                    :
                                        Plaintiff,           :
                                                             :         16 Civ. 6807 (LGS)
               -against-                                     :
                                                             :         OPINION AND ORDER
THE STATE OF NEW YORK, et al.,                               :
                                        Defendants.          :
                                                             :
------------------------------------------------------------ X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 7/5/2017

LORNA G. SCHOFIELD, District Judge:

Pro se Plaintiff Christopher Henry brings this action against the State of New York ("State"), the City of New York ("City"), Police Officer Orlando Rios, the Commissioner of the New York City Human Resources Administration/Department of Social Services ("Commissioner"), Justice Tandra L. Dawson, Support Magistrate Paul Ryneski and Support Magistrate Tionnei Clarke (collectively, "Defendants"), asserting claims under federal and state law arising from Plaintiff's arrest and unrelated state court proceedings. Defendants move to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, Defendants' motion is granted.

## I. BACKGROUND

The following facts are based on the Complaint and court records from Plaintiff's state court proceedings, of which the Court is entitled to take judicial notice. *See Apotex Inc. v. Acorda Therapeutics, Inc.*, 823 F.3d 51, 60 (2d Cir. 2016) (at motion to dismiss stage, court may take judicial notice of documents that are publicly available and whose accuracy cannot reasonably be questioned); *In re WorldCom, Inc.*, 708 F.3d 327, 339 n.63 (2d Cir. 2013) (taking judicial notice of court records). These facts are accepted as true solely for the purpose of this motion. *See Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56–57 (2d Cir. 2016).

### A. Initiation of Matrimonial Proceedings

Plaintiff Christopher Henry is a black male who resides in New York County. On January 2, 2009, Plaintiff's wife Marisa Henry filed a family offense petition against Plaintiff following an alleged incident of domestic violence. On March 12, 2009, Plaintiff initiated divorce proceedings against his wife in the Supreme Court of the State of New York, New York County.

On April 2, 2009, the Criminal Court of the City of New York entered a Temporary Order of Protection directing Plaintiff to stay away from his wife and her home -- the marital residence -- from April 2, 2009, to May 21, 2009.

### B. May 2009 Arrest and Imprisonment

On May 10, 2009, Plaintiff was walking outside the marital residence when he was knocked to the ground by City police officers including Defendant Rios. Plaintiff was assaulted, handcuffed and placed in the back of a patrol car, after which he was transported to the 30th Precinct. Plaintiff was charged with resisting arrest, disorderly conduct and violating an order of protection. If the police officers had looked into the address listed on the order of protection, they would have learned that Plaintiff was the owner of the marital residence. Supervisory police officers had the authority and ability to prevent Plaintiff's arrest. The Complaint alleges conclusorily that Plaintiff was arrested and assaulted pursuant to City policy and practice and that inadequate training and procedure led to his injuries.

Plaintiff was held in a cell at the 30th Precinct for approximately 24 hours, after which he was transported by van to the New York Supreme Court. During the ride to the Supreme Court, Plaintiff was kept in handcuffs and slammed into the side of the van multiple times. Once at the Supreme Court, he was placed in a basement cell with approximately 45 other people. The cell

was crowded, dirty, smelly and slimy. Plaintiff's clothes became soiled from sitting on the floor, and Plaintiff did not sleep well due to fear of assault from the other detainees. He was held in this cell for 24 hours before being arraigned in Manhattan Criminal Court. At his arraignment, Plaintiff pleaded not guilty to all charges and was eventually released. The Complaint does not specify when Plaintiff was released, but alleges both that all charges were terminated in Plaintiff's favor on or about March 10, 2010, and that the criminal proceedings against Plaintiff continued until March 2012.

### C. Continuation of Matrimonial Proceedings

Separate from Plaintiff's arrest, Plaintiff's divorce proceeding was transferred from the Supreme Court Matrimonial Term to the Supreme Court Integrated Domestic Violence Part on May 8, 2009, where it was assigned to Tandra L. Dawson, an Acting Justice of the New York Supreme Court and a Judge on the New York Family Court. On June 28, 2009, Justice Dawson issued a warrant for Plaintiff's arrest and issued an order of protection directing Plaintiff to stay away from the marital property.

On July 16, 2010, Justice Dawson issued a Final Order of Protection requiring Plaintiff to stay away from his wife, and to stay away from the marital home except as per court order. From June 2009 until October 2010, Plaintiff kept away from the marital home. Sometime thereafter, Plaintiff states that he learned the protective order was void and had no legal effect. Plaintiff questioned Justice Dawson about the "void Order of Protection" on or about July 31, 2012, leading to an extremely contentious environment in the courtroom.

From March 2009 to October 2012, Justice Dawson permitted Donnie Williams, a convicted felon, to live and work in the marital property. While Williams lived there, Plaintiff paid housing expenses of approximately $40,000 on the property.

3

On October 21, 2010, Plaintiff sold the marital residence. On March 1, 2012, Plaintiff's wife filed an action for fraudulent conveyance relating to the sale. Justice Dawson referred the action to a special referee, who recommended that the sale of the marital residence be deemed a fraudulent conveyance. Justice Dawson confirmed the special referee's report in orders dated March 29, 2016, and May 13, 2016.

In handling the matrimonial proceedings, Justice Dawson made a number of additional rulings that were adverse to Plaintiff. For instance, on October 8, 2015, Justice Dawson denied Plaintiff's motion for access to court documents. In addition, the Complaint alleges that Justice Dawson falsely stated in a February 27, 2015, Decision and Order that Plaintiff had violated a direct order of the Supreme Court and that she wanted to charge Plaintiff with a criminal offense. Though the February 27, 2015, Decision and Order states that Plaintiff had brought "an exorbitant number" of unnecessary motions, it does not reference wanting to charge Plaintiff with a criminal offense.

### D.     Child Support Proceedings

On January 26, 2009, Plaintiff appeared before Support Magistrate Matthew Troy in Family Court. At that hearing, Plaintiff submitted a receipt showing a mortgage payment of approximately $2,000.

Sometime later, Plaintiff appeared before Support Magistrate Paul Ryneski. On November 26, 2010, Plaintiff sought a downward modification of a support order entered on October 15, 2009. On April 27, 2011, his wife sought increased child support from Plaintiff. On October 5, 2012, Support Magistrate Ryneski modified the October 15, 2009, support order and ordered Plaintiff to pay approximately $150 more in basic child support and $250 less in child care costs per cycle than the 2009 order. Plaintiff objected to the modification, and on January

4

16, 2013, Justice Dawson found that two of Plaintiff's seven objections required remand. However, Justice Dawson rejected Plaintiff's claim that he was entitled to a credit for his housing payments.

On April 11, 2013, Support Magistrate Ryneski issued a revised order of support. Plaintiff objected to that order, and Justice Dawson denied the objection in its entirety on June 7, 2013.

According to the Complaint, Support Magistrate Ryneski took affirmative steps to falsify evidence and eliminate the receipt that Plaintiff submitted to Support Magistrate Troy in order to ensure that Plaintiff paid the maximum amount of child support permitted by law. The Complaint further alleges that Support Magistrate Ryneski lives within a fifteen-minute drive of the marital property, and could not believe that a black man owned property in his neighborhood.

Between February 2009 and the date the Complaint was filed, Support Magistrate Ryneski authorized the Child Support Enforcement Unit ("CSEU") to take over $100,000 in wages from Plaintiff. As a result of these garnishments, Plaintiff did not have enough money to pay his mortgage, and was forced into foreclosure in October 2012. He was homeless for several months.

At some point, Justice Dawson and Support Magistrate Ryneski "conspire[ed]" to "fabricate [Plaintiff]'s total income . . . to ensure that the maximum amount of child support payments was sent" to CSEU and the State Treasury. On or about July 19, 2011, Support Magistrate Ryneski "ordered that Plaintiff should spend six months in jail." On or about January 30, 2015, Justice Dawson affirmed Support Magistrate Ryneski's Findings of Fact despite the findings containing "false information."

On or about September 15, 2015, the Commissioner served Plaintiff with a notice to appear in Family Court.  On or about February 8, 2016, Plaintiff filed a Notice of Special Appearance stating that he would not accept the jurisdiction of the Family Court.  Nonetheless, on March 8, 2016, Support Magistrate Tionnei Clarke issued an Order of Money Judgment against Plaintiff and in favor of the Commissioner in the amount of $26,000.  Plaintiff objected to the decision in May 2016.  On May 17, 2016, Justice Dawson denied the objection in its entirety.

### E. Letters of Complaint

Plaintiff submitted multiple letters to State and City authorities regarding the allegedly unlawful actions taken by Magistrate Ryneski, Justice Dawson and Officer Rios.  The authorities declined to take action in response to the letters.

### F. Racial Animus

In undertaking the actions outlined above, each of the Defendants was motivated by a "desire to injure, oppress, threaten and intimidate Plaintiff because of his African-American race."

Plaintiff commenced this action on August 30, 2016.

## II. STANDARD

On a motion to dismiss, a court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the non-moving party.  *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016).  To withstand dismissal, a pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted).

Courts are obligated to construe pro se pleadings liberally. *See Ahlers v. Rabinowitz*, 684 F.3d 53, 60 (2d Cir. 2012). A pro se complaint must be afforded "special solicitude, interpreting the complaint to raise the strongest claims that it suggests." *Williams v. Corr. Officer Priatno*, 829 F.3d 118, 122 (2d Cir. 2016) (citation omitted).

## III. DISCUSSION

Plaintiff alleges 39 causes of action, including 26 causes of action arising under federal law (Counts 1–7, 10–26, 33 and 34). A majority of these causes of action are brought against multiple Defendants for unrelated reasons. Where a cause of action relates to multiple events, the Opinion addresses it separately as to each event.

### A. Federal Claims Arising from Plaintiff's May 2009 Arrest and Imprisonment

Plaintiff brings 15 claims under 42 U.S.C § 1983 against either or both Officer Rios and the City[1] arising from his May 10, 2009, arrest and subsequent imprisonment (Counts 1–3, 10, 14–19, 24–26, 33 and 34). The claims against Officer Rios are dismised as time barred. The claims against the City are dismissed because of insufficient pleading.

The Complaint alleges a violation of Plaintiff's First Amendment right to assemble outside his property, racially motivated assault, false arrest and imprisonment, failure of supervisors to intervene to prevent his allegedly unlawful arrest, failure to ensure his safety while

---

[1] The Complaint also occasionally refers to claims against the New York Police Department ("NYPD"), which is not named as a defendant, and in any event is not a suable entity. *See* N.Y.C. Charter § 396. In light of the special solicitude afforded to pro se litigants, the Court construes Plaintiff's allegations against the NYPD as allegations against the City. *See Josey v. N.Y.C. Police Dep't*, No. 07 Civ. 6420, 2008 WL 2676620, at *1 n.1 (S.D.N.Y. July 7, 2008) (substituting the City as a defendant in place of the NYPD in case with pro se plaintiff).

in custody, excessive force, malicious prosecution, violation of his due process rights and violation of his Fourth Amendment rights (Counts 1–3, 10, 14–19 and 33).[2] The Complaint also alleges that the City systemically developed and maintained policies that permit violations of constitutional rights and engaged in a conspiracy to establish policies that let the police believe they can use excessive force with impunity in violation of *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) (Counts 14, 17, 24–26 and 34).

In addition, Plaintiff brings three claims against Officer Rios and the City under 42 U.S.C. § 1985 for conspiracy to threaten his rights and deny him equal protection (Counts 20–22) and one claim against the same Defendants under 42 U.S.C. § 1986 for failure to report police brutality to supervisors, which allegedly allowed the claimed conspiracy to continue (Count 23).[3]

Section 1983 actions filed in New York are "subject to a three-year statute of limitations," which generally accrues when the "plaintiff knows or has reason to know of the injury" which is the basis of his action. *Milan v. Wertheimer*, 808 F.3d 961, 963 (2d Cir. 2015) (internal quotation marks and citation omitted).

The statute of limitations on the § 1983 claims against Officer Rios for assault, excessive force and loss of Plaintiff's First Amendment rights during the course of his May 10, 2009, arrest all accrued when the alleged injuries occurred that day. *See Milan*, 808 F.3d at 963. The statute

---

[2] Counts 3, 15, 18, 19 and 33 are alleged against the City in addition to Officer Rios. None of these claims allege that the City acted according to a governmental custom, policy or usage, as is necessary to sue a municipality under § 1983. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–691 (1978). Applying the special solicitude afforded to pro se litigants, these claims are nonetheless construed as *Monell* claims against the City.
[3] These claims likewise fail to allege that the City acted according to a governmental custom, policy or usage, and are liberally construed as *Monell* claims.

8

of limitations for claims related to those injuries thus expired on May 10, 2012. As this action was commenced in 2016, these claims are untimely.

The statute of limitations on § 1983 claims of false arrest, false imprisonment and failure to prevent false arrest begins to run "when the alleged false imprisonment ends" and "the victim becomes held pursuant to [legal] process," including upon arraignment. *Wallace v. Kato*, 549 U.S. 384, 389 (2007). As Plaintiff was arraigned on May 12, 2009, the statute of limitations for his false arrest and false imprisonment claims against Officer Rios began to run on that day and expired on May 12, 2012, rendering those claims untimely.

Applying the pro se presumption in favor of Plaintiff, the last possible date of injury pertaining to Plaintiff's claims of excessive force in custody, failure to ensure safety in custody, failure to provide a duty of care in custody, malicious prosecution, violation of due process and violation of his Fourth Amendment rights was in March 2012, when the Complaint states that criminal proceedings against Plaintiff ended. Thus, the statute of limitations for these claims expired in March 2015 at the latest. *See, e.g.*, *Milan*, 808 F.3d at 963; *Poventud v. City of New York*, 750 F.3d 121, 130–31 (2d Cir. 2014) (malicious prosecution claim accrues upon termination of proceeding in favor of defendant). As the Complaint was not filed until August 25, 2016, the portions of Counts 1, 2, 10, 14, 15, 16, 17, 18, 19 and 33 that relate to Plaintiff's May 2009 arrest and imprisonment are dismissed as time barred as they relate to Officer Rios.

Plaintiff's §§ 1985 and 1986 claims against Officer Rios are likewise untimely. Claims brought under § 1985 are subject to a three-year statute of limitations. *See Allen v. Antal*, 665 F. App'x 9, 12 (2d Cir. 2016) (summary order); *Cornwell v. Robinson*, 23 F.3d 694, 703 (2d Cir. 1994). Claims under § 1986 are subject to a one-year statute of limitations. *See* 42 U.S.C. 1986; *see also Paige v. Police Dep't of Schenectady*, 264 F.3d 197, 199 n.2 (2d Cir. 2001). Like

9

§ 1983 claims, §§ 1985 and 1986 claims accrue when a plaintiff knew or had reason to know of his injury. *See, e.g.*, *Andrews v. Fremantlemedia, N.A., Inc.*, 613 F. App'x 67, 68 (2d Cir. 2015) (summary order); *Young v. Lord & Taylor, LLC*, 937 F. Supp. 2d 346, 354 (E.D.N.Y. 2013). As explained above, each of Plaintiff's alleged injuries occurred on or before March 2012. Thus, Plaintiff was required -- but failed -- to file his §§ 1985 and 1986 claims by March 2015 at the latest. The portions of Counts 20, 21, 22 and 23 that relate to Plaintiff's May 2009 arrest and imprisonment are therefore dismissed as to Officer Rios.

The claims against the City are dismissed for failure to state a claim on which relief can be granted. In order to sue a municipality for a constitutional violation under § 1983 or § 1985, a plaintiff must allege facts sufficient to demonstrate that "the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality" and that "the municipality was the moving force behind the injury alleged" through the municipality's own deliberate conduct. *Jones ex rel. Jones v. Town of E. Haven*, 691 F.3d 72, 80–81 (2d Cir. 2012) (citation omitted) (applying *Monell* to § 1983 claims); *accord Mitchell v. City of New York*, 841 F.3d 72, 80 (2d Cir. 2016) (same); *Zherka v. City of New York*, 459 F. App'x 10, 12 (2d Cir. 2012) (summary order) (citing *Owen v. Haas*, 601 F.2d 1242, 1247 (2d Cir. 1979)) (applying *Monell* to § 1985 claims). Boilerplate allegations of unconstitutional policies are insufficient to plead a municipality's liability under § 1983 or § 1985. *See, e.g.*, *Butler v. Brito*, No. 15 Civ. 9718, 2017 WL 2116687, at *6 (S.D.N.Y. May 15, 2017).

The Complaint does not allege any facts that would support a finding of any City policy or practice that led to the deprivation of Plaintiff's rights in conjunction with his May 2009 arrest and imprisonment. The portions of Counts 3, 14, 15, 16, 17, 18, 19, 20, 21, 22, 24, 25, 26, 33 and 34 that assert claims against the City arising out of Plaintiff's May 2009 arrest and

imprisonment are therefore dismissed. Because a viable § 1985 claim against the City is required to allege a viable § 1986 claim against the City, *see, e.g.*, *Noonan v. City of New York*, No. 14 Civ. 4084, 2015 WL 3948836, at *6 (S.D.N.Y. June 26, 2015) (citing *Gagliardi v. Vill. of Pawling*, 18 F.3d 188, 194 (2d Cir. 1994)), the portion of Count 23 that asserts claims against the City arising from Plaintiff's May 2009 arrest and imprisonment is also dismissed.

Should Plaintiff seek to replead to allege more specifically a policy or custom, those repleaded *Monell* claims may or may not be timely. The statute of limitations for *Monell* claims may begin to run later than it did for the claims against Officer Rios. In *Pinaud v. Cty. of Suffolk*, 52 F.3d 1139 (2d Cir. 1995), the Court of Appeals stated:

> Since an actionable [*Monell*] claim . . . against a . . . municipality depends on a harm stemming from the municipality's "policy or custom," . . . a cause of action against the municipality does not necessarily accrue upon the occurrence of a harmful act, but only later when it is clear, or should be clear, that the harmful act is the consequence of a [municipality's] "policy or custom."

*Id.* at 1157 (2d Cir. 1995) (citing *Monell*, 436 U.S. at 694); *see also Birch v. City of New York*, 675 Fed. App'x 43, 45 (2d Cir. 2017) (summary order) ("In light of *Pinaud*, the limitations period for [plaintiff's] *Monell* claims did not begin until such time as he should have known that his adverse actions resulted from the City's 'policy or custom.'"). However, the Second Circuit has also referred to its discussion of limitations periods for *Monell* claims in *Pinaud* as "demonstrably *dictum*." *Lawson v. Rochester City Sch. Dist.*, 446 F. App'x 327, 329 (2d Cir. 2011) (summary order).

Plaintiff ultimately would have to show that he neither knew nor should have known that the City's challenged conduct resulted from a policy or custom until on or after August 30, 2013, three years before this action was filed. Any Amended Complaint would be subject to dismissal if it were plain on its face that Plaintiff knew or should have known of the alleged policy or

11

custom before that date. *See Ellul v. Congregation of Christian Bros.*, 774 F.3d 791, 798 n.12 (2d Cir. 2014) ("Although the statute of limitations is ordinarily an affirmative defense that must be raised in the answer, a statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint.").

### B. Federal Claims Arising from Matrimonial and Child Support Proceedings

#### 1. Claims Against the State and Justice Dawson, Support Magistrate Ryneski and Support Magistrate Clarke in Their Official Capacities

Plaintiff brings 21 claims against one or more of Justice Dawson, Support Magistrate Ryneski and Support Magistrate Clarke (collectively, the "Judicial Defendants") in their official capacities and the State for purported violations of 42 U.S.C. §§ 1983, 1985 and 1986 (Counts 1–7, 10–15, 18–24 and 33). As both the State and state officials acting in their official capacities are immune from such claims under the Eleventh Amendment, *see, e.g.*, *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65–66, 71 (1989); *Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Scis.*, 804 F.3d 178, 193 (2d Cir. 2015), the portions of Counts 1, 2, 3, 4, 5, 6, 7, 10, 11, 12, 13, 14, 15, 18, 19, 20, 21, 22, 23, 24 and 33 that purport to bring claims against the State and the Judicial Defendants in their official capacities are dismissed.

In his response memorandum, Plaintiff argues that the State has waived its Eleventh Amendment immunity as to his claims against the State and the Judicial Defendants because federal statutes can condition receipt of federal funds on a state waiver of sovereign immunity, and the State accepted federal funds to run the Social Security Administration's Title IV-D program. This argument is unavailing. First, to the extent that Plaintiff suggests that the State's receipt of Title IV-D funds resulted in a general waiver of immunity that entitles him to sue the State and state officials, the argument is incorrect. Title IV-D of the Social Security Act, which funds agencies tasked with collecting child support payments, does not condition receipt of funds

12

on a waiver of sovereign immunity nor does it prohibit discrimination by recipients of such funds. *See* 42 U.S.C. §§ 651–669b (Title IV-D), 2000d-7 (waiving Eleventh Amendment immunity for states who accept funds under statutes prohibiting discrimination by recipients of federal financial assistance); *Parent v. New York*, 786 F. Supp. 2d 516, 531 (N.D.N.Y. 2011) ("Moreover, Congress did not explicitly require states to waive immunity under Title IV–D.").

Second, to the extent that Plaintiff's reference to Title VI of the Civil Rights Act in his response memorandum can be liberally construed to argue that the State and state officials can be sued under Title VI by virtue of receiving Title IV-D funds, Plaintiff lacks standing to make any such claim. Though Congress has expressly abrogated state sovereign immunity for actions filed under Title VI, *see* 42 U.S.C. § 2000d-7, in order to bring a Title VI claim, Plaintiff must be the "intended beneficiar[y] of the federal spending program" about which he complains. *Scelsa v. City Univ. of N.Y.*, 806 F. Supp. 1126, 1140 (S.D.N.Y. 1992); *accord Bary v. Delta Airlines, Inc.*, 553 F. App'x 51, 53 (2d Cir. 2014) (summary order). As Plaintiff is not the intended beneficiary of Title IV-D funds, he lacks standing to bring a Title VI claim.

### 2. Claims Against the Judicial Defendants in Their Individual Capacities

Plaintiff also brings 19 claims against one or more of the Judicial Defendants in their individual capacities for purported violations of 42 U.S.C. §§ 1983, 1985 and 1986 (Counts 1, 2, 4–7, 10–15, 18–23 and 33).

Of these claims, 10 are clearly based on decisions made by the Judicial Defendants in the course of presiding over various portions of Plaintiff's state court proceedings (Counts 1, 2, 5–7, 11–13, 20 and 21); 8 are vague and/or do not appear to be related to the Judicial Defendants at all

(Counts 10, 14, 15, 18, 19, 22, 23 and 33); and 3 allege that the Judicial Defendants took affirmative steps to falsify evidence or otherwise engage in a cover-up (Counts 4, 11 and 20).[4]

A majority of these claims are barred by the doctrine of judicial immunity. A judge or Support Magistrate acting in a judicial capacity is entitled to absolute judicial immunity if (1) the judge or Support Magistrate had jurisdiction over the subject matter before her at the time she took the challenged action and (2) the relevant action was judicial in nature. *See, e.g.*, *Huminski v. Corsones*, 396 F.3d 53, 74–75 (2d Cir. 2005); *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009) (private actor may be afforded the absolute immunity afforded to judges if the private actor's role is "functionally comparable" to those of the judges). In determining whether an action was judicial in nature, courts look to "the nature of the act itself, *i.e.,* whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.,* whether they dealt with the judge in his judicial capacity." *Bliven*, 579 F.3d at 209–10 (quoting *Stump v. Sparkman,* 435 U.S. 349, 362 (1978)). A judge or Support Magistrate is not deprived of immunity because the action she took "was in error, was done maliciously, or was in excess of [her] authority; rather, [she] will be subject to liability *only when [she] has acted in the clear absence of all jurisdiction*." *Gross v. Rell*, 585 F.3d 72, 84 (2d Cir. 2009) (citing *Stump*, 435 U.S. at 356–57). Allegations of conspiracy also do not defeat judicial immunity. *See, e.g.*, *Dorman v. Higgins*, 821 F.2d 133, 139 (2d Cir. 1987).

Here, Counts 1, 2, 5, 6, 7, 11, 12, 13, 20 and 21 arise from decisions made by one or more of the Judicial Defendants in the course of presiding over state legal proceedings over which they had jurisdiction. *See* N.Y Const. art. VI §§ 7(b), 13(b), (c); N.Y. Fam. Ct. Act §§

---

[4] Counts 11 and 20 assert claims directly related to judicial decision-making and claims related to falsification of evidence, and are therefore counted in each category.

411, 439(a), 812. Even if the Court found that the state courts had no jurisdiction over Plaintiff, as he alleges in the Complaint, the *Rooker-Feldman* doctrine requires a finding that the state courts had jurisdiction over the challenged state court proceedings.

Under the *Rooker-Feldman* doctrine, federal district courts lack subject-matter jurisdiction to review a claim when "(1) the plaintiff lost in state court, (2) the plaintiff complains of injuries caused by the state court judgment, (3) the plaintiff invites district court review of that judgment, and (4) the state court judgment was entered before the plaintiff's federal suit commenced." *McKithen v. Brown*, 626 F.3d 143, 154 (2d Cir. 2010). The doctrine also prohibits a district court's review of claims that are "inextricably intertwined" with a state court's determinations. *See Kropelnicki v. Siegel*, 290 F.3d 118, 128 (2d Cir. 2002). A claim is inextricably intertwined where the plaintiff had an opportunity to litigate a claim in a state proceeding and the claim would be barred under the principles of preclusion. *See id.*

All four elements of the doctrine are present here. Plaintiff lost his cases in state court, complains of injuries as a result of the state court judgments and invites this Court to review and overturn findings that underpin the state court judgments. In addition, the state court judgments were rendered prior to the filing of the Complaint in this case. The *Rooker-Feldman* doctrine thus deprives the Court of jurisdiction to analyze whether the Judicial Defendants lacked jurisdiction to make their rulings. *See Fernandez v. Turetsky*, 645 F. App'x 103, 104–05 (2d Cir. 2016) (summary order) (finding that *Rooker-Feldman* doctrine applies to bar federal court review of alleged constitutional violations resulting from state child support judgments). Consequently, the portions of Counts 1, 2, 5, 6, 7, 11, 12, 13, 20 and 21 that pertain to the judicial decisions made by the Judicial Defendants are barred by the doctrine of judicial immunity and are dismissed.

To the extent that Counts 10, 14, 15, 18, 19, 22, 23 and 33 can be read to state a claim on which relief can be granted against the Judicial Defendants -- which they do not -- those claims would be based upon the effects of decisions made by the Judicial Defendants in the course of their judicial duties. As explained above, such claims are barred by the doctrine of judicial immunity. Thus, the portions of Counts 10, 14, 15, 18, 19, 22, 23 and 33 that purport to sue the Judicial Defendants in their individual capacities are dismissed.

The portions of Counts 4, 11 and 20 that allege that one or more of the Judicial Defendants engaged in fraud are barred by the *Rooker-Feldman* doctrine, as Plaintiff already had an opportunity to raise his fraud claims in state court, and in fact did raise the allegations underpinning his fraud claim against Support Magistrate Ryneski before Justice Dawson. *See Kropelnicki*, 290 F.3d at 128; *Sharp v. Bivona*, 304 F. Supp. 2d 357, 363 (E.D.N.Y. 2004) (finding that plaintiff's constitutional claim arising out of alleged fraud by a state court judge was barred by the *Rooker-Feldman* doctrine).

### 3. Claims Against the Commissioner and City

Lastly, Plaintiff brings 17 claims against one or more of the Commissioner, City and CSEU,[5] alleging violations of 42 U.S.C. §§ 1983, 1985 and 1986 (Counts 1–3, 5–7, 10, 12, 18, 20–26 and 33).

Liberally construed, the Complaint alleges that the Commissioner's conduct in enforcing Plaintiff's child support obligations violated § 1983 by causing the loss of the marital property in violation of the First Amendment, imposing limits on Plaintiff's freedom to act on his own

---

[5] The Complaint occasionally references causes of action against the CSEU, despite not naming the CSEU as a defendant. As with the NYPD, the CSEU is a non-suable entity. See N.Y.C. Charter § 396. To the extent that the Complaint raises claims against CSEU, they are construed as claims against the City. *Cf. Josey*, 2008 WL 2676620, at *1 n.1.

16

behalf, failing to act after receiving letters of complaint from Plaintiff, bringing a child support proceeding against Plaintiff, conspiring with the Judicial Defendants to bring Plaintiff into court and make him pay child support, developing policies to garnish wages aggressively and engaging in the "malicious prosecution" of Plaintiff's child support case (Counts 1, 2, 3, 5, 12, 24, 25 and 33). The Complaint also alleges a number of § 1983 claims against the Commissioner that are so vague that they cannot be understood and/or do not appear to implicate actions taken by the Commissioner, no matter how liberally construed (Counts 10, 18 and 26). In addition, the Complaint alleges that the Commissioner violated § 1985 by engaging in a racially-motivated conspiracy with the other Defendants to deny Plaintiff equal protection under law (Counts 20–22), and violated § 1986 by failing to prevent the conspiracy (Count 23).

Each of these claims is barred by the *Rooker-Feldman* doctrine for the same reasons discussed above. *See, e.g.*, *Fernandez*, 645 F. App'x at 104–05. Moreover, as the Complaint does not "plead[] facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct," the Commissioner is entitled to qualified immunity. *See McGowan v. United States*, 825 F.3d 118, 124 (2d Cir. 2016) (quoting *Wood v. Moss*, 134 S. Ct. 2056, 2066–67 (2014)) (affirming dismissal on a motion to dismiss based on qualified immunity although the issue was not considered by the district court). The portions of Counts 1, 2, 3, 5, 10, 12, 18, 20, 21, 22, 23, 24, 25, 26 and 33 that pertain to the Commissioner are therefore dismissed. *See, e.g.*, *Parent*, 786 F. Supp. 2d 516 at 536–37 (finding that commissioner of county department of social services was entitled to qualified immunity for alleged violations resulting from filing and enforcing child support petition, given that there is "no right to refuse to pay child support" and that, even if

there were, it would be "objectively reasonable for [the commissioner] to believe that carrying out [his] duties and enforcing the petition did not violate plaintiff's rights.").

The Complaint further alleges that the City violated § 1983 by garnishing Plaintiff's wages, authorizing the collection of Plaintiff's tax refund, failing to act after receiving complaints from Plaintiff and maintaining a policy of aggressively garnishing paychecks (Counts 2, 3, 4, 24 and 25), and violated §§ 1985 and 1986 by both engaging in, and failing to prevent, the same conspiracy alleged against the Commissioner (Counts 20–23). The Complaint also alleges multiple claims against the City that do not appear to be related to the City at all (Counts 5, 6, 7 and 26).

In order to sue a municipality under §§ 1983 or 1985, a plaintiff must allege facts sufficient to state a claim under *Monell*. *See Zherka*, 459 F. App'x at 12. The only claims in the Complaint that allege that the City violated Plaintiff's rights due to a "custom, policy, or usage of the municipality" pertain to the City's allegedly aggressive policy of garnishing paychecks. However, even assuming that the City was aggressive in garnishing Plaintiff's paychecks, it did so according to state court orders. Not only is such garnishment not a constitutional violation, *cf., generally, McCahey v. L.P. Investors*, 774 F.2d 543 (2d Cir. 1985) (upholding post-judgment garnishment procedures against constitutional attack), but to second-guess those state court orders would violate the *Rooker-Feldman* doctrine. *See, e.g.*, *Galtieri v. Kelly*, 441 F. Supp. 2d 447, 454–55 (E.D.N.Y. 2006) (*Rooker-Feldman* doctrine barred § 1983 claim where fund administrator was acting pursuant to earlier state court order directing the fund be garnished for alimony payments). To the extent that any of the other claims against the City can be construed as *Monell* claims, they would also be barred by the *Rooker-Feldman* doctrine for the reasons discussed above. *See, e.g.*, *Fernandez*, 645 F. App'x at 104–05. Thus, Plaintiff cannot state a

claim on the basis of the City's actions pertaining to the state court proceedings. Absent any viable § 1985 claim against the City, Plaintiff cannot allege a § 1986 claim against the City. *See, e.g.*, *Noonan*, 2015 WL 3948836, at *6.

The portions of Counts 2, 3, 4, 5, 6, 7, 20, 21, 22, 23, 24, 25 and 26 that pertain to Plaintiff's family law allegations against the City are therefore dismissed.

### C. State Law Claims

As each of Plaintiff's federal claims is dismissed for the reasons discussed above, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims, and does not address them. *See, e.g.*, *Kroshnyi v. U.S. Pack Courier Servs., Inc.*, 771 F.3d 93, 102 (2d Cir. 2014) (a district court may decline to exercise supplemental jurisdiction if it has "dismissed all claims over which it has original jurisdiction") (quoting 28 U.S.C. § 1367(c)); *accord Silverman v. Teamsters Local 210 Affiliated Health & Ins. Fund*, 761 F.3d 277, 288 (2d Cir. 2014) (noting that district courts "normally decline to retain jurisdiction in such circumstances").

### D. Motion for Leave to Amend

Plaintiff seeks leave to amend his Complaint in the event the motion to dismiss is granted. While leave to amend should be "freely give[n] . . . when justice so requires," a court may properly deny leave to amend if the amendment would be futile. *F5 Capital v. Pappas*, 856 F.3d 61, 88–89 (2d Cir. 2017). As detailed above, amending the Complaint would be futile as to the claims that are time barred or barred by the *Rooker-Feldman* doctrine, judicial immunity or qualified immunity. Plaintiff's request for leave to amend the Complaint is denied as to these claims.

The only claims not barred on these grounds are claims against the City arising from the May 2009 arrest and imprisonment -- namely, portions of Counts 3, 14, 15, 16, 17, 18, 19, 20,

21, 22, 23, 24, 25, 26, 33 and 34. By July 31, 2017, Plaintiff may submit a letter of no more than three pages, detailing any additional facts he can plead to show a policy or practice that led to the alleged deprivation of Plaintiff's rights in conjunction with his May 2009 arrest and imprisonment. The letter shall not include information pertaining to any other issues or claims. No exhibits may be filed. Plaintiff may not submit any Amended Complaint or proposed Amended Complaint without permission from this Court. Submission of a letter longer than three pages, exhibits or an Amended Complaint will lead to an automatic denial of Plaintiff's requested motion for leave to amend.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the Complaint is GRANTED. The Clerk of Court is respectfully directed to close the motions at Docket Numbers 52 and 55 and mail a copy of this Opinion and Order to the pro se Plaintiff.

Dated: July 5, 2017
New York, NY

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE